**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
   Direct Dial:  (503) 802-2013
   Facsimile:   (503) 972-3713
   E-Mail:      al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
   Direct Dial:  (503) 802-2027
   Facsimile:   (503) 972-3727
   E-Mail:      tim.conway@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

    Attorneys for Debtor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.,** (Constituting the Sunwest Unitary Enterprise as determined by the Order entered on October 2, 2009 in U.S. District Court Case No. 09-cv-6056-HO), | Bankruptcy Court Case No. 08-36637-tmb11 (Reference Withdrawn) |
| Debtor. | **MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES** |

## I.     INTRODUCTION

    Debtor filed its voluntary petition under Chapter 11 of the United States

Bankruptcy Code on December 1, 2008.  Debtor's bankruptcy case was administratively

consolidated with 19 other bankruptcy cases in January of 2009.  Debtor was managed by

Sunwest Management, Inc. ("SMI"), leased its employees from Senenet, Inc., and, prior to

PAGE 1 -     MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
                 TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
                 CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
                 ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

the employment in November of 2008 of Clyde Hamstreet as Chief Restructuring Officer, was controlled by Jon Harder. Debtor is part of a group of related companies involved in the acquisition, development, design, construction, financing, insuring, and operation of senior living and other properties nationwide, along with miscellaneous other assets and operations (the "Sunwest Enterprise").

This memorandum is filed in support of the Joint Motion of Debtor, the Tenants-in-Common Committee, and the Unsecured Creditors' Committee to substantively consolidate the assets and liabilities of the Sunwest Enterprise into Debtor's bankruptcy estate *nunc pro tunc* to March 2, 2009 only for the purpose of establishing the reach-back period for the exercise of avoidance powers of entities that did not file individual bankruptcy cases. The assets and liabilities of the Sunwest Enterprise are equitably consolidated into this bankruptcy case pursuant to the Approval Order and Distribution Plan (as those terms are hereinafter defined). However, the United States Trustee in its Motion to Dismiss asserts that the consolidation ordered pursuant to the Approval Order is not effective in this bankruptcy case. Although Debtor, the Tenants-in-Common Committee, and the Unsecured Creditors Committee disagree with the position of the United States Trustee, the Joint Motion is filed as a precaution.

## II.    BACKGROUND

### A.    THE SEC ENFORCEMENT ACTION

On March 2, 2009, the Securities and Exchange Commission (the "SEC") filed its complaint in the United States District Court for the District of Oregon initiating Case No. 09-cv-6056-HO (the "SEC Enforcement Action"). The SEC's complaint alleges that SMI, Harder and others committed violations of securities laws in the offering of investments in the Sunwest Enterprise, operated the Sunwest Enterprise as a unitary enterprise, and operated the unitary enterprise virtually as a "Ponzi" scheme. The SEC requested injunctive relief and the appointment of a receiver. The SEC's complaint and

application for preliminary injunction and appointment of receiver were supported by the declarations of Michael E. Liftik and Michael Fortunato, together with its memorandum of points and authorities.  Declaration of Albert N. Kennedy ("Kennedy Decl."), Exs. 1 through 5.

On March 10, 2009, the Court entered its Order Granting Preliminary Injunction and Appointing Receiver (the "Receivership Order").  The Receivership Order appointed Michael Grassmueck as receiver for the Receivership Entities identified in the Receivership Order and two subsequent orders that added additional Receivership Entities. Debtor is one of the Receivership Entities.  The Receivership Order charged the Receiver with various rights, powers and duties, including the power and duty to investigate the financial affairs of the Receivership Entities and develop a plan of distribution to creditors and investors.  The Receivership Order also appointed Clyde Hamstreet as Chief Restructuring Officer ("CRO") for the Receivership Entities, with the rights and powers, together with the Management Committee, to make all decisions with respect to the operations, asset dispositions and restructuring of the Receivership Entities.  Kennedy Decl., Ex. 6.

**B.    THE INVESTIGATION OF THE RECEIVER AND CRO**

Subsequent to his appointment, the Receiver undertook an investigation of the financial condition and operation of the Receivership Entities.  His findings were set forth in the First Interim Report of Receiver and in his Declaration and Rebuttal Declaration in Support of Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise.  Kennedy Decl., Ex. 10; Declaration of Michael Grassmueck ("Grassmueck Decl."), Exs. 1 and 2.

The CRO continued to discharge his obligations to manage the Receivership Entities and to explore all avenues for restructuring the operations of the Receivership Entities.  The CRO's actions and conclusions are summarized in his Declaration in Support of

PAGE 3 -    MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
            TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
            CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
            ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise.

Declaration of Clyde Hamstreet ("Hamstreet Decl."), Exs. 1 and 2.

The Receiver determined that investor and creditor funds were utilized for purposes that were not disclosed prior to the investments and for purposes inconsistent with the expectations and documents related to the investments.  Both the Receiver and the CRO concluded that the Sunwest Enterprise generally conducted its business as if it were a single corporate entity with centralized management, personnel administration, marketing services, and cash management.  SMI managed nearly all of the affiliated senior living facilities, and Senenet was the employer of nearly all of the personnel who worked at the affiliated entities. The Sunwest Enterprise routinely aggregated and comingled funds in centralized SMI and Senenet accounts.  Additionally, funds were typically taken from wherever they could be found within the company and used wherever they were needed.  Thousands of transfers took place back and forth between senior living facilities, between senior living facilities and other Sunwest Entities, and between Sunwest Entities and Harder.  SMI's records reflect a variety of descriptions for transfers into and out of the accounts of Sunwest Entities and Harder. Many of the lending and borrowing entities are now defunct.  It would be next to impossible to track, account for, and resolve these obligations.  Furthermore, it was not merely profitable facilities that propped up facilities with negative cash flows.  Transfers were made from distressed facilities to now-profitable facilities.  SMI would draw cash from any available source to satisfy cash shortfalls.  It became Sunwest's practice to merely review all account balances each morning for overdraft positions and then find ways to transfer money from other accounts to cover those shortfalls before the banks deemed the account to be in overdraft.  Funds were being utilized and paid on a pure availability and needs basis.  The extent and magnitude of comingling renders it impracticable to trace the ultimate source and use of funds.

PAGE 4 -    MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

The CRO and Receiver also concluded that in order to treat investors and creditors fairly, as well as to serve the public purpose of establishing an orderly mechanism to administer the assets of the Receivership Entities, and implement an equitable mechanism to reduce the losses experienced by investors and creditors, the Distribution Plan needed to be premised on the Court recognizing the fact that the use of funds by the Sunwest Enterprise was on a unitary basis, without regard to separate purposes or restrictions on the legal rights of purportedly separate entities, and that it would be inequitable to treat the claims of investors and creditors in any manner other than on a pari passu, pro rata equitable claim calculation basis as proposed in the Distribution Plan.

C.      THE STATE OF OREGON INVESTIGATION

The Director of the Oregon Department of Consumer and Business Services also conducted an investigation into the business activities of the Sunwest Enterprise.  The Director determined that certain parties within the Sunwest Enterprise engaged in activities constituting violations of the Oregon securities law.  The Director, acting by the authority of the Oregon Securities Law, issued Findings of Fact, Conclusions of Law, and Orders Assessing Civil Penalties.  Kennedy Decl., Exs. 15 and 16.  The Findings of the Director confirm the allegations of the SEC in the SEC Enforcement Action and the conclusions of the Receiver and CRO.  The Director found that the Sunwest Enterprise applied the collective liquid assets of the Receivership Entities in a manner that satisfied its short-term capital requirements.  Canyon Creek Development acted as a "financial hub" to ensure that each facility had sufficient funds for its daily operations.  The Sunwest Enterprise would pool its assets in a number of ways:

1.      One facility would make a distribution to its shareholders, including principals, employees, and affiliates of the Sunwest Enterprise (the "Inside Shareholders").  Certain Inside Shareholders would then reinvest their proceeds from that distribution into a

different facility.  At times the distributions were disproportionate to the equity share relative to outside TIC investors and preferred interests.

2.      One facility would distribute its surplus funds to a checking account at Wells Fargo.  Certain principals, employees, and affiliates had check writing authority for that account.  Funds in that account would then be distributed to the accounts of other facilities.

3.      Canyon Creek Development would borrow funds from one facility and lend the funds to a different facility.  As a result of this activity, by June 2008 Canyon Creek Development held approximately $59 million of receivables due from facilities and had issued approximately $54 million in notes payable to other facilities.

4.      Surplus funds from one facility were distributed directly to other facilities.

5.      Funds that were not immediately needed for other purposes were loaned or given to other projects.

6.      One facility would over-fund its payroll account at Senenet and Senenet would use those excess funds to meet the payroll obligations of other facilities.

The Director further found that at some point it became Canyon Creek Development's and SMI's practice to merely review all account balances in the morning for overdraft positions and then find ways to transfer funds from other accounts to cover those account shortfalls before banks deemed them to be in overdraft status.  As such, even facilities that did not have sufficient funds from operations transferred funds to other facilities that did.  As a result, the Sunwest Enterprise operated all projects as if they were one integrated enterprise.

### D.      BENEFIT FROM CONSOLIDATION

Both the CRO and the Receiver also concluded that a restructuring of the Sunwest Enterprise based on a recognition that it was, in fact, a unitary enterprise and the

PAGE 6 -    MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
            TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
            CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
            ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

consolidation of its assets and liabilities into one debtor would benefit all creditors. They concluded that a consolidation of assets and liquidation will be more fair and it will generate significantly greater returns for all creditors and investors. The Unsecured Creditors Committee and the Tenants-in-Common Committee have reached the same conclusion.

The CRO and Receiver concluded that the alternative to a reorganization as a consolidated company is a liquidation of each facility or group of facilities. Even in an orderly liquidation, very few investors will receive any recovery. The CRO's analysis concluded that only 27% of investors would receive any recovery and only 20% of those would receive more than 25¢ on the dollar. In the aggregate, the return to creditors and investors from an orderly liquidation would be between 3¢ and 13¢ on the dollar. Even those numbers assume that properties with TICs can be sold in an orderly fashion. If that assumption is not correct, recoveries will be closer to 3¢ on the dollar rather than 13¢ on the dollar. On the other hand, the CRO and his advisors have estimated that a restructuring as a consolidated company could generate $500 million in value. Recovery to investors from a consolidated enterprise could well approach 70¢ on the dollar.

## E.    THE DISTRIBUTION PLAN AND DISTRIBUTION PLAN APPROVAL

On August 25, 2009, the Receiver and CRO filed their proposed Distribution Plan, together with their joint motion for approval of the Distribution Plan, notice of approval hearing, and detailed declarations by the CRO, the Receiver, Alvarez & Marsal advisors Matt Marcos and Paul Rundell, and forensic accountant Greg Gadawski. Kennedy Decl., Exs. 11 and 12; Declaration of Matt Marcos ("Marcos Decl."), Ex. 1; Declaration of Paul Rundell ("Rundell Decl."), Ex. 1; Declaration of Greg Gadawski ("Gadawski Decl."), Ex. 1. The notice of the approval hearing was mailed to 81,000 potential claimants. Copies of the hearing notice and distribution plan were posted on the website of the Receiver.

The cornerstone of the Distribution Plan is that all assets and liabilities of the Sunwest Enterprise, except for certain third party claims, will be pooled or consolidated into the bankruptcy estate of the Debtor and reorganized through Debtor's bankruptcy case.

The hearing on approval of the Distribution Plan was held on September 23, 2009 (the "Approval Hearing").  The Court heard testimony and arguments, and reviewed documentary evidence in connection with the Distribution Plan.  All parties were afforded an opportunity to make an appearance, present evidence, cross-examine the witnesses offered in support of approval of the Distribution Plan, and make arguments in connection with the Court's consideration of approval of the Distribution Plan.  The Tenants-in-Common Committee filed pleadings in support of the Distribution Plan and unitary enterprise concept and spoke in favor of it at the Approval Hearing.[1]

On October 2, 2009, the Court entered its Findings of Fact and Conclusions of Law (the "Findings and Conclusions") and entered its Order approving the Distribution Plan (the "Approval Order").  Kennedy Decl., Exs. 17 and 18.  The Findings and Conclusions included the following:

> "The Sunwest Enterprise, however, was managed as a unitary enterprise that generally did not respect the separateness of the Receivership Entities nor the restricted purposes of invested funds that were intended to be limited to use for specific facilities.  Without the Distribution Plan, the investors have little hope that they will achieve the expected, or perhaps any, return on their investments.  Many investors would receive no recovery of their investment without the prompt implementation of the Distribution Plan.  The status quo is unsustainable and will cause further losses to all investors and creditors.

Findings and Conclusions at 3.

---

[1] The United States Trustee ("UST") received notice of the Approval Hearing.  The UST was listed as a party in interest on the docket of the SEC Enforcement Action.  Although the UST had attended at least four prior hearings in the SEC Enforcement Action, the UST elected not to attend the Approval Hearing.

"15.  The Court has considered all the evidence presented to it and has determined for purposes of approving the Distribution Plan, and not for any other purpose, that there is substantial evidence of the Sunwest Enterprise procuring and using funds in a commingled manner without the prior knowledge or consent of investors and creditors, and in a manner inconsistent with the representations to investors and creditors.  That commingling, coupled with the inability to trace funds, the evidence of recordation of descriptions that were inconsistent, changed after the fact, and/or inaccurate, and the evidence that the Sunwest Enterprise decided how and where to use funds on a "who-needs-the cash now" basis warrants the finding of unitary enterprise, and claim calculation method and claim distribution treatment set forth in the Distribution Plan.  In fact, the evidence is overwhelming that the Sunwest Enterprise has been conducted as a unitary enterprise.  The Court believes that, subject to the specific exceptions in the Distribution Plan, it would be inequitable for an investor or creditor to have its claim allowed or receive a distribution based on the existing value of any specific facility given the evidence that funds were taken from one property for use on another regardless of whether the funding property had positive or negative cash flow or value."

Findings and Conclusions at 16.

"18. The Court concludes that the evidence of commingling is sufficient, the commingling so extensive and pervasive, and the impact of the comingling on the amount owed to investors and creditors so significant that, in order to make an equitable distribution to investors and creditors, as well as to serve the public purpose of establishing an orderly mechanism to administer the assets of the Receivership Estate and implement an equitable mechanism to reduce the losses experienced by investors and creditors, the Receivership Entities are to be considered a unitary enterprise for the purposes set forth in the Distribution Plan, and that a single Chapter 11 filing to reorganize the unitary Sunwest Enterprise is warranted and appropriate."

Findings and Conclusions at 18.

"11. The Court has carefully considered the Distribution Plan and concludes that it represents the most equitable distribution of the value of the Receivership Estate to Claimants.  The Distribution Plan presents adequate means for the realization of the highest and best value of the Sunwest Enterprise for the benefit of all stakeholders, including through the recognition of the unitary enterprise and its reorganization through the Reorganization Plan.  * * * The terms and conditions of the Distribution Plan do not discriminate unfairly against any class

PAGE 9 -    MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

of Claimants and are fair and equitable in the best interest of all interested parties."

Findings and Conclusions at 23.

The Approval Order authorizes and directs the Receiver and the CRO to take all actions necessary and appropriate to implement the Approved Plan. The Receiver and the CRO are authorized to reorganize the unitary enterprise recognized by the Approved Plan through this bankruptcy case. The Approved Plan provides that all assets and liabilities of the Sunwest Enterprise will be consolidated in this bankruptcy estate by the filing of consolidated schedules of assets and liabilities in this bankruptcy case.

**F.    FAILURE TO IMPLEMENT THE CONSOLIDATION OF ASSETS AND LIABILITIES WILL THREATEN THE REALIZATION OF ANY RETURN TO UNSECURED CREDITORS**

The failure to recognize that the Sunwest Enterprise is, in fact, a unitary enterprise with consolidated assets and liabilities, will result in damage to all Claimants of the Sunwest Enterprise. The CRO and Matt Marcos, one of the CRO's advisors, have stated that a restructuring of the Sunwest Enterprise through a Reorganization Plan adopted in this bankruptcy case could generate $500 million of value, resulting in distributions to Claimants potentially approaching 70¢ on the dollar. On the other hand, the result of failing to implement the Distribution Plan and consolidate of the assets and liabilities of the Sunwest Enterprise into this bankruptcy estate will result in a liquidation of the Sunwest Enterprise and a recovery of approximately 3¢ on the dollar to Claimants. Further, lender deficiencies will increase by $100 million or more in a liquidation. Hamstreet Decl., Exs. 1 and 2; Marcos Decl., Exs. 1 and 2.

* * *

* * *

* * *

* * *

PAGE 10 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

### III.    LEGAL ARGUMENT

#### A.    THE AFFAIRS OF THE SUNWEST ENTITIES ARE SO ENTANGLED THAT SUBSTANTIVE CONSOLIDATION IS APPROPRIATE AND NECESSARY

The bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898. *In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000). The primary purpose of substantive consolidation is to ensure the equitable treatment of all creditors. *Bonham*, 229 F.3d at 764. Courts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation. Moreover, courts have sanctioned the substantive consolidation of two or more entities nunc pro tunc in order to allow the pursuit of fraudulent transfers or avoidable preferences made by the consolidated entities as of the date of the filing of the initial bankruptcy petition. *Bonham*, 229 F.3d at 765.

In *Bonham*, the Ninth Circuit affirmed a bankruptcy court's order of substantive consolidation of the bankruptcy estate of an individual debtor and non-debtor corporations. The Ninth Circuit noted that no uniform guideline for substantive consolidation exists and, because of the fact intensive nature of the consolidation determination, courts must engage in a case-by-case analysis. *Id.* at 765. The Ninth Circuit reviewed the various tests employed by other Courts of Appeal and adopted the Second Circuit test, which requires the consideration of two factors: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. The presence of either factor is a sufficient basis to order substantive consolidation. *Id.* at 766. The Ninth Circuit noted that any sort of cost benefit analysis is not required. Rather, substantive consolidation is premised on a sole aim: fairness to all creditors. *Id.* at 767.

PAGE 11 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

There can be no doubt that consolidation is appropriate under the second factor, entanglement of the debtor's affairs. The affairs of the Sunwest Enterprise are so entangled that consolidation will benefit all creditors.[2] In fact, adherence to the separation of the entities would result in injustice to the creditors of the Sunwest Enterprise.

This Court has already found that the affairs of the Sunwest Enterprise are so entangled that the only way to make an equitable distribution to Claimants and to reduce losses experienced by investors and creditors is to recognize that the Sunwest Enterprise is a unitary enterprise and consolidate all assets and liabilities of the enterprise in the estate of this Debtor for reorganization this bankruptcy case. The Court has already found that the status quo was unsustainable and will cause further losses to all investors and creditors. Based on those findings, the Court has ordered that all assets and liabilities of the Sunwest Enterprise be consolidated into this Debtor's bankruptcy estate and reorganized in this bankruptcy case. Any delay in implementing that consolidation and reorganizing this Debtor will result in a liquidation, the loss of as much as $500 million in value, and the reduction of potential distributions to Claimants from as much as 70¢ on the dollar to approximately 3¢ on the dollar. The affairs of this Debtor are inextricably entangled and any effort to unentangle them will result in damage to all creditors. The affairs of the Sunwest Enterprise were entangled prior to March 2, 2008. Evidence of that entanglement is overwhelming. The fact that the entanglement resulted in violations of the federal and state securities laws created another layer of legal entanglement that resulted in the SEC Enforcement Action, the Receivership Order, the Distribution Plan and the Approval Order. The Approval Order and the Distribution Plan consolidated the assets and liabilities of the Sunwest Enterprise. The

---

[2] The language "benefit of all creditors" does not mean each and every creditor. It means benefit the creditor body as a whole as made clear when the Ninth Circuit states that "substantive consolidation is premised on a sole aim: fairness to all creditors." and "the primary purpose of substantive consolidation is to ensure the equitable treatment of all creditors." *Id.* at 767, 764 (internal quotations omitted).

PAGE 12 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
              TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
              CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
              ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

entanglement and consolidation are a fact.  This Motion merely seeks bankruptcy court

recognition of that fact, to the extent that such recognition is necessary.

### B.    THE UST IS PRECLUDED FROM RELITIGATING THE FACTUAL AND LEGAL ISSUES ALREADY DETERMINED BY THIS COURT IN THE SEC ENFORCEMENT ACTION

Substantive consolidation is a separate and distinct concept from the equitable

consolidation ordered by this Court in the Approval Order.  Under the circumstances of this

case, it is a distinction without a difference.  Substantive consolidation is an equitable remedy

granted by a federal court exercising its equitable powers.  The equitable consolidation

ordered in the Approval Order is also an equitable remedy granted by a federal court

exercising its equitable powers.

Orders of substantive consolidation combine the assets and liabilities of

separate and distinct—but related—legal entities into a single pool and treat them as though

they belong to a single entity.  The consolidated assets create a single fund from which all

claims against the consolidated debtors are satisfied.  The primary purpose of substantive

consolidation is to ensure the equitable treatment of all creditors.  *Bonham* at 764.

The equitable consolidation provided in the Distribution Plan and ordered by

the Approval Order, accomplishes the same thing for the same purpose.  In approving the

Distribution Plan, this Court concluded that "a substantial body of case law concerning

distributions through federal equity receiverships supports equitable pooling of the assets of

receivership entities in order to enable pro rata distributions to investors in cases like this

one."  Findings and Conclusions at 22.  The Distribution Plan provides that the assets and

liabilities of the Sunwest Enterprise will be consolidated into a single pool and treated as

though they belong to a single entity.  The consolidated assets create a single fund from

which all claims against the consolidated debtors are satisfied.  The primary purpose is to

ensure the equitable treatment of all creditors.  A primary reason for the equitable pooling is

the entanglement of the affairs of the Sunwest Enterprise.  As applied to the facts of this case,

PAGE 13 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
             TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
             CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
             ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

the equitable consolidation ordered by the Approval Order and the bankruptcy substantive

consolidation sought in this Motion are identical.  They each provide for the same result for

the same reasons.

        The UST is precluded from relitigating the issues of fact and law that were

decided by this Court in the SEC Enforcement Action.  This Court made factual findings

relating to the entanglement of the affairs of the Sunwest Enterprise.  It made the findings

that the affairs of the Sunwest Enterprise were so entangled that all of the assets and

liabilities of the Sunwest Enterprise should be consolidated and reorganized in this

Bankruptcy Case.  The Court found that such consolidation is in the best interests of, and will

ensure the equitable treatment of, all creditors.  The doctrine of issue preclusion prevents

relitigation of all issues of fact or law that were actually litigated and necessarily decided in a

prior proceeding.  *Robi v. Five Platters, Inc.*, 834 F.2d 318, 322 (9th Cir. 1988).  Once an

issue is actually and necessarily determined by a court of competent jurisdiction, that

determination is conclusive in subsequent suits based on a different cause of action.  *Id.*

at 326.

## C.      SUBSTANTIVE CONSOLIDATION NUNC PRO TUNC IS APPROPRIATE

        Bankruptcy courts have sanctioned substantive consolidation of entities nunc

pro tunc to allow standing to pursue avoidance powers.  *Bonham* at 765, 767, 770.  The

bankruptcy court has discretion to determine, in light of the equitable nature of substantive

consolidation, whether nunc pro tunc consolidation should be ordered.  *Bonham* at 771.

Because the effect of substantive consolidation is to pool both the assets and liabilities of the

consolidated entities, and to assure an equality of treatment to creditors, it follows that the

controlling date from which to measure the reach-back period for the bankruptcy avoidance

actions should be the same for all creditors.  Consequently, substantive consolidation for the

purpose of measuring the reach-back period for avoidance actions should be ordered *nunc*

PAGE 14 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
                      TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
                      CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
                      ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

*pro tunc* to the initiation of the SEC Enforcement Action, March 2, 2009 or a prior petition

date for a specific entity that has filed bankruptcy.

DATED:  November 12, 2009.

TONKON TORP LLP


By */s/ Albert N. Kennedy*
Albert N. Kennedy, OSB No. 821429
Direct Dial:    (503) 802-2013
Timothy J. Conway, OSB No. 851752
Direct Dial:    (503) 802-2027
Attorneys for Debtor

ELSAESSER JARZABEK ANDERSON MARKS
& ELLIOTT, CHTD.


By */s/ Ford Elsaesser*
Ford Elsaesser
Attorneys for the Unsecured Creditors
Committee

KARR TUTTLE CAMPBELL


By */s/ Merrilee A. MacLean*
Merrilee A. MacLean
Attorneys for the Tenants-in-Common
Committee


034618/00002/1821172v1


PAGE 15 -   MEMORANDUM IN SUPPORT OF JOINT MOTION OF DEBTOR, THE
TENANTS-IN-COMMON COMMITTEE, AND THE UNSECURED
CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF
ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES