**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial: (503) 802-2013
    Facsimile:  (503) 972-3713
    E-Mail:    al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
    Direct Dial: (503) 802-2027
    Facsimile:  (503) 972-3727
    E-Mail:    tim.conway@tonkon.com
**TONKON TORP** ʟʟᴘ
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

      Attorneys for Debtor

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

In re

**STAYTON SW ASSISTED LIVING, L.L.C.,**
(Constituting the Sunwest Unitary Enterprise as
determined by the Order entered on October 2,
2009 in U.S. District Court Case
No. 09-cv-6056-HO),

        Debtor.

**USDC Case No. 09-cv-6082-HO**

Bankruptcy Court
Case No. 08-36637-tmb11
(Reference Withdrawn)

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW IN SUPPORT
OF THE JOINT MOTION OF DEBTOR,
THE TENANTS-IN-COMMON
COMMITTEE AND THE UNSECURED
CREDITORS' COMMITTEE FOR
SUBSTANTIVE CONSOLIDATION OF
ASSETS AND LIABILITIES OF
SUNWEST RELATED ENTITIES**

THIS MATTER came before the Court on the Joint Motion of Debtor, the

Tenants-in-Common Committee and the Unsecured Creditors' Committee for Substantive

Consolidation of Assets and Liabilities of Sunwest Related Entities (the "Consolidation

PAGE 1 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
           JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
           AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
           CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
           ENTITIES

Motion"). The Court has considered the Consolidation Motion and Memorandum in Support

thereof, the numerous responses and objections filed in opposition to the Consolidation Motion,

all declarations and exhibits submitted in support of the Consolidation Motion, all declarations

and exhibits submitted in opposition to the Consolidation Motion, and all other submissions,

written and oral, at or before the hearing on the Consolidation Motion. The Court has also taken

judicial notice of the pleadings on file in this Case and in the SEC Enforcement Action.

　　　　　Good cause appearing, the Court finds:

　　　　　1.　　Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the

United States Code on December 1, 2008.

　　　　　2.　　Debtor remains in possession of its assets and continues to operate its

business as debtor-in-possession pursuant to 11 USC §§ 1107 and 1108.

　　　　　3.　　This Court has jurisdiction over this matter pursuant to 28 USC § 1334.

　　　　　4.　　Venue is proper in this district pursuant to 28 USC §§ 1408 and 1409.

　　　　　5.　　On or about November 9, 2009, notice of the filing of the Consolidation

Motion and of the date, time and place of the hearing on the Consolidation Motion, together with

a copy of the Consolidation Motion, was served by mail on over 81,000 interested parties.

Notice of the date, time and place of the hearing on the Consolidation Motion was also served by

an automatic e-mail message generated by the CM/ECF system on November 12, 2009. Notice

provided was sufficient under the facts and circumstances of this case.

## FINDINGS OF FACT

　　　　　6.　　Debtor is part of a group of related entities involved in the acquisition,

development, design, construction, financing, insuring and operation of senior living and other

PAGE 2 -　　FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
　　　　　　　JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
　　　　　　　AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
　　　　　　　CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
　　　　　　　ENTITIES

properties nationwide, along with miscellaneous other assets and operations (the "Sunwest Enterprise").

7.    At its peak, the Sunwest Enterprise controlled and operated hundreds of assisted living facilities around the country. The Sunwest Enterprise also controlled and managed other investments, including real property investments, both related and unrelated to the assisted living facilities. Over the past several years, hundreds of millions of dollars in new investments in the Sunwest Enterprise were solicited, primarily offered and structured as tenant-in-common ("TIC") real property investments, without disclosures to investors of material information about the Sunwest Enterprise.

8.    The Sunwest Enterprise was controlled by Jon Harder ("Harder") during all relevant periods. Harder was chief executive officer and majority owner of Sunwest Management, Inc. ("SMI"), Senenet, Inc. ("Senenet"), and Canyon Creek Development, Inc. ("CCD"). Harder was a director and majority owner of Canyon Creek Financial, LLC ("CCF"). During all relevant time periods, Harder was also manager or general partner of virtually all of the hundreds of entities that owned and controlled the senior living facilities and other properties that comprised the Sunwest Enterprise (together with SMI, Senenet, CCD and CCF, the "Sunwest Entities").

9.    SMI was a management company that managed the hundreds of senior living facilities throughout the United States that comprised most of the Sunwest Enterprise. Senenet was an employee leasing company that employed and leased employees to all the Sunwest Entities. CCD located, acquired, promoted, subdivided and arranged financing for the real estate investment properties, including senior living facilities, that comprised the Sunwest

PAGE 3 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
ENTITIES

Enterprise. CCF was a captive broker-dealer for CCD that offered or sold securities in senior living properties sponsored by CCD and managed by SMI.

10.    The Sunwest Enterprise was managed as a unitary enterprise that generally did not respect the separateness of the Sunwest Entities or the restricted purposes of invested funds intended to be limited to use for Sunwest Entities.

11.    The Sunwest Enterprise routinely aggregated and commingled funds in centralized SMI and Senenet accounts and in an account in Harder's name (the "Harder Account"). Sunwest Entities would over-fund payroll liabilities to Senenet and Senenet diverted the excess funds for use by other Sunwest Entities. Senenet could not repay the over-funded payroll liabilities because the excess funds had already been distributed to the Harder Account or other entities requiring cash infusions. Funds from the Harder Account would be transferred to the accounts of other entities. CCD would borrow funds from Sunwest Entities and the Harder Account and lend the funds to a different entity. Funds from one entity were distributed directly to other entities. Funds from development projects that were stalled or which were not immediately needed for other purposes were loaned or given to other projects.

12.    The SMI and CCD accounts were used to aggregate funds to make single, larger payments to investors on account of their interests in various Sunwest Entities. It was the practice at CCD and SMI to review all account balances each morning for overdraft positions. Funds from other accounts would be transferred to the Harder Account and distributed to cover those account shortfalls before banks deemed them to be in overdraft status. As such, even entities that did not have sufficient funds from operations transferred funds to entities that did. The Sunwest Enterprise operated all entities as if they were one integrated enterprise.

PAGE 4 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
            JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
            AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
            CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
            ENTITIES

13.    Tens of millions of inter-entity transfers were classified in the Sunwest records to conceal the true nature of the transactions.  Any tracing analysis would be complicated by the fact that not all transfers were made directly between Sunwest Entities .  The extent and magnitude of the transfers renders it impracticable, if not impossible, to trace the ultimate source and use of funds.

14.    On March 2, 2009, the Securities and Exchange Commission (the "SEC") filed its complaint in the United States District Court for the District of Oregon initiating case No. 09-cv-6056-HO (the "SEC Enforcement Action").  The SEC's complaint, and supporting declarations, alleges that SMI, Harder, CCD and CCF, and others, committed violations of securities laws in the offering of investments in the Sunwest Enterprise, operating the Sunwest Enterprise as a unitary enterprise, and operating the unitary enterprise virtually as a "Ponzi" scheme.

15.    On March 10, 2009, the Court entered its Order Granting Preliminary Injunction and Appointing Receiver (the "Receivership Order").  The Receivership Order appointed Michael Grassmueck as Receiver for the Receivership Entities identified in the Receivership Order and two subsequent orders that added additional Receivership Entities. Debtor is one of the Receivership Entities.  The Receivership Order charged the Receiver with various rights, powers and duties, including the power and duty to investigate the financial affairs of the Receivership Entities and develop a plan of distribution to creditors and investors. The Receivership Order also appointed Clyde Hamstreet as Chief Restructuring Officer ("CRO") for the Receivership Entities with the rights and powers, together with the Management

PAGE 5 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
ENTITIES

Committee, to make all decisions with respect to the operations, asset dispositions and restructuring of the Receivership Entities.

16.    The Receiver determined that investor and creditor funds were utilized for purposes that were not disclosed prior to the investments, and for purposes inconsistent with the expectations and documents related to the investments.  Both the Receiver and the CRO concluded that the Sunwest Enterprise generally conducted its business as if were a single corporate entity, with centralized management, personnel administration, marketing services and an "all in" cash policy.

17.    On September 21, 2009, the Director of the Oregon Department of Consumer and Business Services, acting by authority of the Oregon Securities Law, issued Findings of Fact, Conclusions of Law, and Order Assessing Civil Penalties.  The Director found that the Sunwest Enterprise applied the collective liquid assets of the Sunwest Entities in a manner that satisfied its short-term capital requirements and enabled the Sunwest Enterprise to induce investors to invest.  The Sunwest Enterprise pooled its assets and operated all projects as if they were one integrated enterprise.

18.    Both the CRO and Receiver concluded that a restructuring of the Sunwest Enterprise based on a recognition that it was, in fact, a unitary enterprise and the consolidation of its assets and liabilities into one debtor would benefit all unsecured creditors and investors (together "Claimants").  They concluded that a consolidation of assets and liabilities will be fair and will generate significantly greater returns for all Claimants.

19.    The CRO and Receiver concluded that the alternative to a reorganization as a consolidated entity is a liquidation of each facility or group of facilities.  Even in an orderly

PAGE 6 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
ENTITIES

liquidation, very few Claimants will receive any recovery. The CRO's analysis concluded that only 27% of Claimants would receive any recovery, and only 20% of those would receive more than 25¢ on the dollar. In the aggregate, the return to Claimants from an orderly liquidation would be between 3¢ and 13¢ on the dollar. Even those numbers assume that properties with TICs can be sold in an orderly fashion. If that assumption is not correct, recoveries will be closer to 3¢ on the dollar rather than 13¢ on the dollar.

      20.    On August 25, 2009, the Receiver and CRO filed their proposed Distribution Plan, together with their Joint Motion for Approval of the Distribution Plan. A cornerstone of the Distribution Plan is that all assets and liabilities of the Sunwest Enterprise, except for certain third-party claims, will be pooled or consolidated into the bankruptcy estate of Debtor and reorganized through Debtor's bankruptcy case.

      21.    The hearing on approval of the Distribution Plan was held on September 23, 2009 (the "Approval Hearing"). The Court heard testimony and arguments, and reviewed documentary evidence in connection with the Distribution Plan. All parties were afforded an opportunity to make an appearance, present evidence, cross examine the witnesses offered in support of approval of the Distribution Plan, and make arguments in connection with the Court's consideration of approval of the Distribution Plan.

      22.    On October 2, 2009, the Court entered its Findings of Fact and Conclusions of Law and Order Approving the Distribution Plan (the "Approval Order"). The Approval Order included the following:

> "The Court authorizes and directs the Receiver and the CRO, respectively, as set forth in the Approved Plan, to take all actions necessary and appropriate to implement the Approved Plan. In particular, but without limitation, the Receiver and the CRO are authorized to reorganize the unitary enterprise recognized by the

PAGE 7 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

Approved Plan through the pending Chapter 11 case of *In re Stayton SW Assisted Living, L.L.C.*, bankruptcy case No. 08-36637, pending before this Court, as set forth in the Approved Plan. The CRO and the Receiver are authorized to proceed with filing of any notices, motions, pleadings or other papers in the Reorganization Case necessary or appropriate to effectuate the Distribution Plan and confirm the Reorganization Plan."

23.     The failure to implement the Distribution Plan and consolidate the assets and liabilities of the Sunwest Enterprise into this bankruptcy estate will likely result in a liquidation of the Sunwest Enterprise and a recovery of approximately 3¢ on the dollar to Claimants. Further, lender deficiencies will increase by $100 million or more in a liquidation.

24.     The time and expense necessary to even attempt to unscramble the affairs of the Sunwest Enterprise would be so substantial that it would threaten the realization of any recovery for all Claimants.

25.     Substantive consolidation will not affect the rights of secured creditors with regard to their secured claims and/or lien rights under Sections 506 and 1129 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

26.     The Bankruptcy Court's power of substantive consolidation has been considered part of the Bankruptcy Court's general equitable powers since the passage of the Bankruptcy Act of 1898. *In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000). The primary purpose of substantive consolidation is to ensure the equitable treatment of all creditors. *Bonham*, 229 F.3d at 764. Courts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation. Moreover, courts have sanctioned the substantive consolidation of two or more entities *nunc pro tunc* in order to allow

PAGE 8 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED ENTITIES

the pursuit of fraudulent transfer or avoidable preferences made by the consolidated entities.
*Bonham*, 229 F.3d at 765.

       27.    Because of the fact intensive nature of the consolidation determination,
courts must engage in a case-by-case analysis. *Bonham*, 229 F.3d at 765. Substantive
consolidation requires the consideration of two factors: (a) whether creditors dealt with entities
as a single economic unit and did not rely on their separate identity in extending credit or
(b) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.
The presence of either factor is a sufficient basis to order substantive consolidation. The
language "benefit of all creditors" does not mean each and every creditor. Rather, it means
benefit to the creditor body as a whole. Substantive consolidation is premised on a sole aim:
fairness to all creditors, and a cost benefit analysis is not required. *Bonham*, 229 F.3d at 766,
767.

       28.    This Court has already found that the affairs of the Sunwest Enterprise are
so entangled that the only way to make an equitable distribution to Claimants and to reduce
losses experienced by Claimants is to recognize that the Sunwest Enterprise is a unitary
enterprise and consolidate all assets and liabilities of the enterprise in the estate of this Debtor for
reorganization in this bankruptcy case. Based on those findings, this Court has ordered that all
assets and liabilities of the Sunwest Enterprise be consolidated into this Debtor's bankruptcy
estate and reorganized in this bankruptcy case.

       29.    The affairs of the Sunwest Enterprise are inextricably entangled and any
effort to unentangle them will result in damage to all Claimants and would threaten the
realization of any recovery for Claimants. The affairs of the Sunwest Enterprise were entangled

PAGE 9 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
               JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
               AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
               CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
               ENTITIES

prior to March 2, 2008. Evidence of that entanglement is overwhelming. The fact that the entanglement resulted in and was used in furtherance of violations of federal and state securities laws created another layer of legal entanglement that resulted in the SEC Enforcement Action, the Receivership Order, the Distribution Plan and the Approval Order. The Approval Order and the Distribution Plan consolidated the assets and liabilities of the Sunwest Enterprise. The entanglement and consolidation are a fact.

30.     The Approval Order does not preclude or bar the entry of an order of substantive consolidation in this case because (a) the Approval Order expressly authorizes the CRO and the Receiver to proceed with filing any notices, motions, pleadings or other papers in this case necessary or appropriate to effectuate the Distribution Plan and confirm the Reorganization Plan, and (b) the bankruptcy doctrine and remedy of substantive consolidation were not available in the SEC Enforcement Action. Restatement (Second) of Judgments § 26.

31.     The bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation or to place conditions on substantive consolidation. *Bonham*, 229 F.3d at 769.

32.     Based on the foregoing, the Court finds that substantive consolidation of the assets (with the exception of third-party claims) and liabilities of the Sunwest Enterprise into this Bankruptcy Case is appropriate and in the best interest of all creditors.

33.     Consistent with the Approval Order and the Distribution Plan, the Non-Mingled Property Election provided in the Distribution Plan shall be preserved. This Court reserves determination of the objection by any party that a particular asset or interest in property should be excluded from the operation of the Distribution Plan and substantive consolidation

PAGE 10 -   FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
            JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
            AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
            CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
            ENTITIES

consistent with the Non-Mingled Property Election of Article IX of the Distribution Plan. Such objections shall be deferred to a later hearing to be set by the Court, properly noticed to all parties, to occur not later than confirmation of the Reorganization Plan.

34.    In accordance with the principles set forth in IRS Field Service Advice Memorandum No. 199952016 (September 24, 1999), substantive consolidation shall not create a new "entity" or any other vehicle for income tax purposes.

35.    Because the effect of substantive consolidation is to pool both the assets and liabilities of the consolidated entities and to assure an equality of treatment of all creditors, it follows that the controlling date from which the reach-back period for bankruptcy avoidance actions relating to transfers from Sunwest Entities that have not filed an individual bankruptcy case should be ordered *nunc pro tunc* to the initiation of the SEC Enforcement Action, March 2, 2009.

36.    To the extent any of the above Conclusions of Law are more properly characterized as Findings of Fact, they are hereby deemed to be Findings of Fact.

DATED: _22 Dec. 2009_.

Michael R. Hogan
United States District Court Judge

034618/00002/1898475v1

PAGE 11 -    FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE
             JOINT MOTION OF DEBTOR, THE TENANTS-IN-COMMON COMMITTEE
             AND THE UNSECURED CREDITORS' COMMITTEE FOR SUBSTANTIVE
             CONSOLIDATION OF ASSETS AND LIABILITIES OF SUNWEST RELATED
             ENTITIES