**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
   Direct Dial:  (503) 802-2013
   Facsimile:   (503) 972-3713
   E-Mail:      al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
   Direct Dial:  (503) 802-2027
   Facsimile:   (503) 972-3727
   E-Mail:      tim.conway@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

    Attorneys for Debtor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.** (the Consolidated Sunwest Related Entities), | Bankruptcy Court Case No. 08-36637-tmb11 (Reference Withdrawn) |
| Debtor. | **MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE** |
| | *Oral Argument Requested* |

    Stayton SW Assisted Living, L.L.C. on behalf of itself and the estates of each of the Consolidated Sunwest Related Entities (collectively, "Debtor" or "Stayton") hereby submits this Motion (this "Procedures Motion") for the entry of an Order (the "Procedures Order"):

PAGE 1 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID
                 PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING
                 FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL
                 APPROVAL OF THE SALE

(1) approving the Agreement of Purchase and Sale between Debtor and BRE/SW Portfolio LLC dated January 15, 2010 ("Purchase Agreement"), a copy of which is attached hereto as Exhibit 1; (2) approving the bid procedures set forth in Exhibit L to the Purchase Agreement ("Bid Procedures"); (3) authorizing and scheduling an auction (the "Auction") at which time Debtor, in accordance with the Bid Procedures, will solicit higher or better bids for certain of Debtor's assets; (4) approving those provisions of the Purchase Agreement that provide payment of a break-up fee plus reimbursement of expenses to BRE/SW Portfolio (the "Stalking Horse Bidder" or "Blackstone"); (5) approving the form and manner of notice of the proposed sale to the Stalking Horse Bidder or to the successful bidder at the Auction, the Bidding Procedures, the Auction, and the sale approval hearing (the "Sale Hearing"); and (6) scheduling the Sale Hearing.[1]

In support of this Procedures Motion, Debtor represents and sets forth as follows:

## BACKGROUND

1. Prior to December 1, 2008, Debtor and Sunwest Management, Inc. were part of a group of hundreds of related entities involved in acquisition, development, design, construction, financing, insuring and operating senior living and other properties, assets, and operations (the "Sunwest Enterprise").

2. On December 1, 2008, Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

---

[1] Capitalized terms used but not defined in this Procedures Motion shall have the meanings ascribed to them in the Purchase Agreement. To the extent there are inconsistencies between this Procedures Motion and the Purchase Agreement, the Purchase Agreement shall control.

PAGE 2 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

3. On March 2, 2009, the United States Securities and Exchange Commission ("SEC") commenced an action in the United States District Court for the District of Oregon against Sunwest and other persons and entities for, among other things, violation of federal securities laws and seeking an injunction and appointment of a receiver in SEC v. Sunwest Management, Inc., et al., U.S. District Court Case No. 09-cv-6056-HO ("SEC Receivership Case"). On March 10, 2009, the Court entered its Order in the SEC Receivership case granting an injunction and appointing Michael Grassmueck as Receiver ("Receiver") and Clyde Hamstreet as Chief Restructuring Officer ("CRO") of the Receivership Entities as defined therein that were part of the Sunwest Enterprise ("Receivership Entities").

4. On October 2, 2009 in the SEC Receivership Case, the United States District Court entered its order (the "Approval Order") approving the Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise ("Distribution Plan"). The Court also entered Findings of Fact and Conclusions of Law. The Court recognized that the Receivership Entities were operated as a unitary enterprise that did not respect the legal separateness of the various entities, and the Court ordered that the assets and liabilities of the Receivership Entities be consolidated into the bankruptcy estate of Stayton and reorganized in this bankruptcy case.

5. On October 2, 2009, the consolidated schedules of assets and liabilities and the consolidated statement of financial affairs for the Receivership Entities were filed in this case.

\* \* \*

\* \* \*

PAGE 3 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

6. On November 12, 2009, Debtor, the Tenants-in-Common Committee and the Unsecured Creditors' Committee filed with the Court a Joint Motion for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities ("Consolidation Motion").

7. The Consolidation Motion was granted by Order Granting Joint Motion of Debtor, the Tenants-in-Common Committee and the Unsecured Creditors' Committee for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities entered on December 22, 2009 ("Consolidation Order"). The Consolidation Order provided that all assets and liabilities of the entities identified therein ("Sunwest Entities") are substantively consolidated into Debtor's bankruptcy estate, that equitable title to real property held by all Sunwest Entities is consolidated in Debtor's bankruptcy estate, and that Debtor shall have the right to convey title to or interests in real property pursuant to a confirmed plan of reorganization or other order of the Court.

8. Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of Title 11 of the United States Code. No trustee or examiner has been appointed in the Debtor's case.

9. The relief requested herein by Debtor is based on the court's authority pursuant to 11 U.S.C. §§ 105(a), 363, 365, 503, 1107 and 1108, and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014(a). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The Distribution Plan approved by the court in the SEC Receivership Case provided for a Plan of Reorganization to create a new legal structure that would continue to own

PAGE 4 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2         01/19/2010 9:56 AM

and operate certain senior living facilities defined therein and identified as Holdco Facilities as a stand alone business enterprise or, alternatively, for the sale of certain Holdco Facilities to a buyer in accordance with a motion pursuant to 11 U.S.C. § 363 and confirmation of a Plan of Reorganization.

## A.     Proposed Sale Transaction

11. In early September 2009, Blackstone made an unsolicited offer to purchase most of the Holdco Facilities. An initial term sheet was signed and entered into on or about September 15, 2009.

12. Subsequent to the execution of the term sheet, Debtor and Blackstone have engaged in significant negotiations resulting in the Purchase Agreement. The closing of the transaction contemplated by the Purchase Agreement is subject to court approval and any higher or better bids that may be obtained pursuant to the Bid Procedures proposed in this Procedures Motion.

13. A copy of the Purchase Agreement is attached hereto as Exhibit 1 (excluding certain exhibits and schedules) and incorporated herein by reference. The Purchase Agreement sets forth the terms and conditions on which Blackstone has agreed to purchase certain of the Debtor's assets and assume certain of Debtor's liabilities.

14. A summary of certain material terms of the Purchase Agreement is set forth below:

| | |
|---|---|
| Sale and Purchase of Assets: | Stayton will sell, and Purchaser will purchase, the real property, improvements and related personal property of approximately 134 senior living facilities previously identified as certain of the Holdco Properties (collectively, the "Properties"). |

PAGE 5 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2            01/19/2010 9:56 AM

| | |
|---|---|
| Purchase Price: | Unadjusted Purchase Price consists of:<br>• $235,000,000 ("Cash/Equity Portion"), *plus*<br>• Purchaser's assumption of Assumed Real Property Loans and Assumed Personal Property Debt. |
| Purchaser's Deposit: | $50,000,000 in cash or irrevocable, unconditional letter of credit to be lodged with Chicago Title Insurance Company ("Escrow Agent") no more than three Business Days following date of Agreement. |
| Rollover Equity Election: | Stayton may elect to receive a portion of the Cash/Equity Portion of the Purchase Price in the form of membership interest in the Purchaser (or an affiliate of Purchaser designated by Purchaser) to be issued to an entity to be formed by Stayton owned solely by investors who have not filed an appeal to the Debtor's Plan of Reorganization or the sale to Purchaser (the "Rollover Member").<br>• Maximum amount: $25 million.<br>• Minimum amount: $10 million.<br>• Ownership percentage to be calculated pro rata to other members of Purchaser entity.<br>• Purchaser has option to invest up to $75 million of additional equity to acquire existing real property loans at a discount in which case Rollover Member may acquire proportionate share ownership.<br>• Rollover Member will not have management rights in Purchaser.<br>• Election to be made no more than ten days after the court approves the Plan of Reorganization. |
| Purchase Price Adjustments: | Cash Consideration Amount will be:<br>• Adjusted to reflect any increase or decrease in the "Actual Assumed Real Property Loan Balance" versus the "Underwritten Assumed Real Property Loan Balance";<br>• Reduced if the actual net present value of interest ("Actual Interest NPV") on the Assumed Real Property Loans exceeds the agreed target present value of such interest ("Underwritten Interest NPV") by more than $2,300,000; and/or<br>• Increased or decreased by customary pro rations at Closing. |
| Limitations on Price Adjustments: | If aggregate of adjustments to Cash Consideration Amount under the first two bullets of the caption "Purchase Price Adjustments" above exceed $33,367,000:<br>• Stayton may elect to terminate the Agreement and return the Deposit to Purchaser and pay Purchaser $3 million.<br>• Purchaser may void Stayton's termination notice by |

PAGE 6 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

|  |  |
|---|---|
|  | agreeing to accept the $33,367,000 maximum adjustment. If, within one year following termination under this provision, Stayton agrees to sell directly or indirectly all or substantially all of the Properties to an entity or entities that are not owned 50% or more by Stayton's creditors or investors, Stayton must pay to the Purchaser the Break-Up Fee. |
| Stalking Horse Auction: | • Bid Deadline: 42 days after entry of the Auction Order.<br>• Qualified Bidders must:<br>   o have total assets in excess of $2.5 Billion or shareholders' equity of not less than $500 million<br>   o have engaged Stayton, Emeritus Corporation or one or more reputable regional or national operator(s) of senior living facilities<br>• Qualified Bids must:<br>   o be accompanied by $50 million Deposit<br>   o provide for payment of Cash Consideration and Rollover Equity Election comparable to the Agreement, including a Cash/Equity Portion of Purchase Price of at least $261,242,485 plus assumption of the Assumed Real Property Loans and the Assumed Personal Property Debt<br>   o specify any changes requested in the Agreement by the bidder<br>   o be binding commitments not be subject to due diligence or other contingencies<br>• If there is no Superior Offer, there shall be no auction and Stayton and the Purchaser will be obligated to complete the transaction (subject to the terms of the Agreement).<br>• If there *is* a Superior Offer, an auction will be conducted in the court room, supervised by the court<br>   o on the fifth business day following the Bid Deadline<br>   o Purchaser and Superior Bidders may bid at the auction.<br>   o Bids must be in increments of at least $1 million.<br>   o In evaluating bids, if any, the Break-Up Fee and Expense Reimbursement payable to Purchaser (Blackstone) will be considered and shall be credited to it's Bid.<br>• After determination of the successful Bidder, the final Sale Agreement will be executed and the successful bidder shall be obligated to complete the transaction (subject to the terms of the Purchase Agreement).<br>• Deposits of Qualifying Bidders may be retained for 25 days as back-up bids. |
| Closing: | Third business day following satisfaction of all conditions. Deferred Closing for affected Properties if conditions not met. |
| Conditions to Closing: | Standard conditions, including: |

PAGE 7 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2                01/19/2010 9:56 AM

|  |  |
|---|---|
|  | - Governmental approvals and waiting periods:<br>  o Hart-Scott-Rodino Antitrust Improvements Act of 1976<br>  o Senior living licensing approvals for at least 115 Properties representing at least 85 percent of the Allocated Purchase Price of all Properties.<br>- Entry by the court of the Procedures Order, the order authorizing conveyance of the investors' interests in certain Properties ("TIC Properties"), and the Sale Approval Order.<br>- Modification of agreements governing Stayton's debt to be assumed, including possible "cram-downs," as necessary to comply with Modification Schedule.<br>- Conveyance of clear title to Properties and issuance of title insurance. |
| Employees of Stayton: | - Purchaser agrees to offer employment to all facility employees at comparable compensation.<br>- Purchaser expects to hire most headquarters employees for at least four months.<br>- Stayton to pay severance under Stayton's plan for headquarters employees terminated within six months. |
| Break-Up Fee: | Purchaser will receive a Break-Up Fee equal to the greater of $9 million or ten percent of the amount by which the Cash/Equity Portion of Purchase Price reflected by a Successful Bid in the auction exceeds $235 million. |
| Expense Reimbursement: | Purchaser is entitled to reimbursement of expenses in certain events. Expenses incurred prior to execution are stipulated to be $4,156,105.<br>Disputes as to amount of Purchaser's expenses resolved by the court. |
| Payment of Break-Up Fee and Expense Reimbursement: | Break-Up Fee and Expense Reimbursement payable only if:<br>- Stayton willfully fails to Close the sale after the court enters the Sale Order<br>- The court approves a sale of the Properties to a successful Bidder other than Stalking Horse Bidder<br>- Sale does not occur because the court, after entering the Procedures Order, confirms a plan of reorganization that does not include sale of the Properties to Stalking Horse Bidder.<br>See also, the caption "Limitation on Price Adjustments" above. |
| Termination: | - By mutual consent<br>- By Purchaser if the Auction Order is not entered by January 28, 2010 |

PAGE 8 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

|  |  |
|---|---|
| | - By Purchaser unless Closing by April 30, 2010
- By either Party unless Closing by July 30, 2010
- Any termination by Seller is subject to court approval |
| Default Remedies: | - Stayton's remedy in Purchaser default – retain Deposit.
- Purchaser's remedy in Stayton default or non-performance:
  - Specific performance
  - Break-Up Fee and Expense Reimbursement in some instances (see above)
  - Deferral of the Closing or exclusion of some affected Properties |

The above constitutes only a summary description of certain terms of the Purchase Agreement and all parties are directed to the Purchase Agreement for a full recitation of its terms.

15. In order to induce Blackstone to enter into the Purchase Agreement and in recognition of the costs incurred and to be incurred in efforts undertaken and to be undertaken in connection with the contemplated transactions, including due diligence investigation and legal and professional expenses incurred in negotiating and documenting the transaction, Debtor agreed to seek court approval of certain bidding procedures, overbid protections, and break-up fees as set forth in the proposed Purchase Agreement.

16. Debtor has determined, in the exercise of its business judgment, that the proposed Purchase Agreement with Blackstone is the best restructuring opportunity at this time with a likelihood of the transaction being successfully completed with respect to the sale of the Properties.

**B.    The Bidding Procedures**

17. In the Purchase Agreement, Debtor and Blackstone agree to certain Bidding Procedures fully set forth in Exhibit L to the Purchase Agreement which is also attached to this Procedures Motion as Exhibit 1. In accordance with the Purchase Agreement, Debtor

PAGE 9 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

seeks approval of these bid procedures so that additional qualified parties may bid on the assets at a time and place prior to the hearing on the sale.  The bid procedures attached hereto are in compliance with the Purchase Agreement and would provide other interested parties an opportunity to bid.

**C.     The Break-up Fee and Expense Reimbursement**

19. In recognition of, and as an inducement for, the Stalking Horse Bidder's expenditure of time and resources, and to procure the benefits to Debtor's estate of securing a stalking horse or minimum bid, Debtor, by this Procedures Motion, seeks approval of limited protections for the Stalking Horse Bidder in the form of the break-up fee plus the expense reimbursement.  Specifically, as is summarized herein and set forth more fully in Article 10.2 of the Purchase Agreement, Debtor seeks authority to pay to Stalking Horse Bidder a fee in cash in an amount equal to the sum of the Expense Reimbursement plus the Break-Up Fee (as such terms are defined in the Purchase Agreement) which shall be payable to the Stalking Horse Bidder in the event that (1) Debtor willfully fails to close the transactions contemplated by the Purchase Agreement after the Court enters a Sale Approval Order with Talking Horse Bidder as Purchaser; (b) the Court approves a sale of the Properties in favor of a Successful Bidder other than Stalking Horse Bidder or its assignee; or (c) the sale of the Properties to Stalking Horse Bidder pursuant to the Purchase Agreement does not occur because the Court, after entry of the Auction Order, confirms a plan of reorganization that does not include a sale of the Properties to Stalking Horse Bidder pursuant to the Purchase Agreement.

19. Debtor has agreed with Stalking Horse Bidder that the expenses incurred by Stalking Horse Bidder as of the date of the Purchase Agreement which would be subject to

PAGE 10 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID
            PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING
            FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL
            APPROVAL OF THE SALE

Expense Reimbursement under the Purchase Agreement is $4,156,105 (the "Stipulated Prior Expenses").  In addition to the Stipulated Prior Expenses, upon termination of the Purchase Agreement by Stalking Horse Bidder, Stalking Horse Bidder shall advise Debtor of the total amount of expenses for which it seeks reimbursement pursuant to the Expense Reimbursement, which notice shall include an itemized statement of such costs.  Any dispute with respect to the Expense Reimbursement shall be submitted to the Court by motion.  The Break-Up Fee is designated in the Purchase Agreement as an amount equal to the greater of (a) $9,000,000 and (b) ten percent of the amount by which the Cash/Equity Portion of Purchase Price reflected by the Successful Bid (as defined in the Bid Procedures) exceeds $235,000,000.

**D.    The Break-Up Fee and the Expense Reimbursement Should be Approved**

20. Debtor submits that good cause exists to approve the Break-up Fee and the Expense Reimbursement.  Stalking horse protections such as the Break-up Fee and the Expense Reimbursement encourage a potential purchaser to invest the requisite time, money and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of Debtor's assets, despite the inherent risks and uncertainties of the Chapter 11 process.  Approval of break-up fees in connection with the sale of assets pursuant to section 363 of the Bankruptcy Code has become an established practice in Chapter 11 cases.  See *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535-537 (3d Cir. 1999) (detailing situations where a breakup fee is entitled to administrative expense status under Bankruptcy Code section 593(b)(1)(A) because the fees provided a benefit to the estate); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 112 (Bankr. D. Del 2005) (noting the break-up fee and other bid procedures provided a

PAGE 11 -    MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID
             PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING
             FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL
             APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2          01/19/2010 9:56 AM

benefit to the estate by encouraging a quick consummation of the deal); *In re Homelife Corp.*, 2002 WL 31115654 (D. Del. Sep. 20, 2002) (following *O'Brien*).

21. The Break-up Fee proposed pursuant to the Stalking Horse Purchase Agreement is reasonable in light of the Stalking Horse Bidder's efforts and the Estimated Purchase Price. In the present case, the Break-up Fee payable to the Stalking Horse Bidder is less than 1% of the Unadjusted Purchase Price. The Break-up Fee, in terms of its percentage and amount, is of the same or lower order of magnitude as break-up fees approved in other cases. *See, e.g., In re Global Home Products, LLC, et al.,* Case No. 06-10340 (KD) (Bankr. D. Del July 14, 2006) (order approving a break-up fee of $650,000 or 3.1% of purchase price of $21 million); *In re Women First Healthcare*, 332 B.R. at 118 (approving a break-up fee of $50,000 or 2.8% on the sale of assets worth $1.75 million); *In re Decora Indus., Inc.*, 2002 WL 32332749 (D. Del. May 20, 2002) (Farnan, J.) (approval on appeal break-up fee of $625,000 or 3% of purchase price); *In re Fruit of the Loom, Inc.*, Case No. 99-4497 (PJW) (Bankr. D. Del. Dec. 11, 2001) (approving a $25 million, or 3% of purchase price, break-up fee); *In re Caldor, Inc. – NY*, Case No. 95-B-44080 (JLG) (Bankr. S.D.N.Y. Feb. 4, 1999) (order approving break-up fees of $1,900,000 on purchase price of $75,735,000 and $3,550,000 on purchase price of $142,000,000 or approximately 2.5%).

22. The Break-Up Fee and Expense Reimbursement provided for in the Purchase Agreement were negotiated by the parties in good faith and at arm's length.

PAGE 12 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2            01/19/2010 9:56 AM

**E.     Notice of Proposed Sale, Bidding Procedures, Auction and Sale Hearing**

23.     In accordance with the terms of the Purchase Agreement, Debtor seeks Court approval of the form and manner of notice of the proposed sale, bidding procedures, auction and the sale hearing.

24.     Not later than five business days after entry of the Order Approving this Procedures Motion ("Procedures Order"), Debtor will cause a Notice of Auction and Sale Hearing setting forth the fact of the proposed sale, the Bidding Procedures including Qualified Bidder and overbid requirements, the Auction process, the date of the Sale Hearing and deadline for filing any objections prior to the Sale Hearing in a form substantially similar to that attached hereto as Exhibit 2 ("Notice of Auction and Sale Hearing").  The Notice of Auction and Sale Hearing shall be consistent with the Bid Procedures and provide that the bid deadline will be 42 days after entry of the Procedures Order and that the auction shall be conducted five business days after the bid deadline with at least three business days' notice to Blackstone and other Qualified Bidders.  The Sale Hearing shall be set for a date 10 days after the auction, with objections to the sale being due three business days prior to the Sale Hearing.

25.     Debtor believes that service of the Notice of Auction and Sale Hearing should be limited to service upon the United States Trustee for the District of Oregon, the creditors' and TIC committees appointed in this or the SEC Receivership Case, the TIC investors, Debtor's secured lenders or their counsel, counsel for the Stalking Horse Bidder, the Internal Revenue Service, the Oregon Department of Revenue, the Securities and Exchange Commission, the U.S. Attorney's Office, and those parties having filed a notice of appearance and request for special notice pursuant to Bankruptcy Rule 2002, along with any parties known

PAGE 13 -     MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2          01/19/2010 9:56 AM

by Debtor to have expressed a bona fide interest in entering into a proposed transaction with Debtor for the sale of its assets or an investment in the Debtor, and any other party that may express an interest in bidding on Debtor's assets.  Debtor shall also publish the Notice on the websites of BMC, Hamstreet & Associates, and The Grassmueck Group.

26. A paramount goal of any proposed sale or use of property of the bankruptcy estate is to maximize the proceeds received by the estate.  To that end, courts uniformly recognize procedures intended to enhance competitive bidding that are consistent with the goal of maximizing value received by the estate and therefore appropriate in the context of bankruptcy sales.  Debtor believes the proposed bidding procedures, overbid protections, and break-up fees set forth in this Procedures Motion should be considered in light of that criteria and the court should adopt such bidding procedures, overbid protections and break-up fees that are fair, reasonable, necessary and appropriate in order to facilitate the prompt and efficient sale of Debtor's assets.

## CONCLUSION

WHEREFORE, Debtor requests that this court enter an order approving the Purchase Agreement, including the bidding procedures, overbid protection, break-up fee and

PAGE 14 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

010396-0926-08726-Active.11886002.2         01/19/2010 9:56 AM

expense reimbursement requested therein, and provide that notice of the Auction and sale process be provided in the manner set forth above.

Dated this 19th day of January, 2010.

TONKON TORP LLP

By */s/ Albert N. Kennedy*
Albert N. Kennedy, OSB No. 821429
Direct Dial: (503) 802-2013
Timothy J. Conway, OSB No. 851752
Direct Dial: (503) 802-2027
Attorneys for Debtor

PAGE 15 -   MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **MOTION FOR APPROVAL OF AN AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A HEARING FOR FINAL APPROVAL OF THE SALE** was served on all ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

      DATED this 19th day of January, 2010.

                          TONKON TORP LLP

                          By */s/ Albert N. Kennedy*
                              Albert N. Kennedy, OSB No. 821429
                              Direct Dial: (503) 802-2013
                              Timothy J. Conway, OSB No. 851752
                              Direct Dial: (503) 802-2027
                              Attorneys for Debtor

034618/00002/1939674v2