**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial:  (503) 802-2013
    Facsimile:   (503) 972-3713
    E-Mail:      al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
    Direct Dial:  (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:      tim.conway@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

       Attorneys for Debtor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.,** (the Consolidated Sunwest Related Entities), | Bankruptcy Court Case No. 08-36637-tmb11 (Reference Withdrawn) |
| Debtor. | **DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN UNSECURED CREDIT PURSUANT TO 11 U.S.C. § 364(b)** |
| | *Expedited Hearing Requested* *Oral Argument Requested* |

Pursuant to 11 U.S.C. § 364(b) and Bankruptcy Rule 4001(c), Debtor moves this

Court for interim and final orders substantially in the form attached hereto as Exhibit 1 (the

"Order") authorizing Debtor to obtain post-petition financing pursuant to Section 364(b) of the Bankruptcy Code. In support of this Motion, Debtor respectfully represents as follows:

1. On December 1, 2008, Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. Debtor and Sunwest Management, Inc. ("Sunwest") were part of a group of hundreds of related entities involved in acquisition, development, design, construction, financing, insuring, and operating senior living and other properties (the "Sunwest Enterprise").

2. On March 2, 2009, the United States Securities and Exchange Commission ("SEC") commenced an action in this Court against Sunwest Management, Inc. and other persons and entities for, among other things, violation of federal securities laws, and seeking and injunction and appointment and receiver in SEC v. Sunwest Management, Inc., et al., U.S. District Court Case No. 09-cv-6056-HO ("SEC Receivership Case"). On March 10, 2009, the Court entered its Order in the SEC Receivership Case granting an injunction and appointing Michael Grassmueck as Receiver ("Receiver") and Clyde Hamstreet as Chief Restructuring Officer ("CRO") of the Receivership Entities as defined therein that were part of the Sunwest Enterprise (the "Receivership Entities").

3. On October 2, 2009, this Court entered its Order (the "Approval Order") in the SEC Receivership Case approving the Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise (the "Distribution Plan"). The Court also entered Findings of Fact and Conclusions of Law. The Court recognized that the Receivership Entities were operated as a unitary enterprise that did not respect the legal separateness of the various entities and the Court ordered that the assets and liabilities of the Receivership Entities be consolidated into the bankruptcy estate of Debtor and reorganized in this bankruptcy case.

4.     On October 2, 2009, the consolidated Schedules of Assets and Liabilities and the consolidated Statement of Financial Affairs for the Receivership Entities were filed in this case.

5.     On November 12, 2009, Debtor, the Tenants-in-Common Committee and the Unsecured Creditors' Committee filed their Joint Motion for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities (the "Consolidation Motion").  The Consolidation Motion was granted by Order Granting Joint Motion of Debtor, the Tenants-in-Common Committee and the Unsecured Creditors' Committee for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities entered on December 22, 2009 (the "Consolidation Order").  The Consolidation Order provided that all assets and liabilities of the entities identified therein (the "Sunwest Entities") are substantively consolidated into Debtor's bankruptcy estate, that equitable title to real property held by all Sunwest Entities is consolidated into Debtor's bankruptcy estate, and that Debtor shall have the right to convey title or interests in real property pursuant to a confirmed plan of reorganization or other order of the Court.

6.     Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1008 of Title 11 of the United States Code.  No trustee or examiner has been appointed in Debtor's case.

7.     The statutory bases for the relief requested by this Motion are 11 U.S.C. § 364(b) and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 .S.C. §§ 1408 and 1409.

9.      By this Motion, Debtor requests entry of an order pursuant to 11 U.S.C. § 364(b) authorizing Debtor and Sunwest (together "Borrower") to (a) obain and incur post-petition debt in the amount of $500,000 from AEW Partners VI SW Investments LLC ("Lender") on an unsecured basis allowable under 11 U.S.C. §§ 364(b) and 503(b)(1) as an administrative expense, and (b) execute and deliver to Lender a Promissory Note in substantially the form attached to the Order as Exhibit A ("Promissory Note").

10.      Debtor's Management Committee ("MC") is in negotiations with Lender for the investment by Lender of up to $100 million to a reorganized debtor on the effective date of a plan of reorganization to be confirmed in this case ("Exit Financing").  Debtor has been informed by the MC and Lender that Lender's ability to provide Exit Financing to the reorganized debtor is conditioned upon the entry of the Order and the incurrence of debt by Borrower pursuant to the terms of the Order and the Promissory Note.

11.      Pursuant to the Promissory Note, Lender has agreed to make a loan to Borrower in the amount of $500,000.  The Promissory Note provides that the obligations of Borrower pursuant thereto will accrue interest at a rate equal to 7 percent per annum and will be payable on the earlier of the (a) effective date of any plan of reorganization confirmed in this bankruptcy case, (b) first anniversary of the date upon which the loan is advanced and the Promissory Note is executed and delivered, or (c) occurrence of an Event of Default as defined in the Promissory Note.

12.      It is in the best interests of Debtor and its consolidated estate to be authorized to obtain credit from Lender on an unsecured basis pursuant to the terms set forth in the Promissory Note because it will assist Debtor and the MC in finalizing an agreement with

Lender to provide the Exit Financing and in preserving and maximizing the going concern value of Debtor and its consolidated estate for the benefit of all claimants.

13.     The proposed Order attached hereto as Exhibit 1 provides in paragraph 7 thereof that the automatic stay imposed by Section 362(a) of the Bankruptcy Code is modified so that after the occurrence of an Event of Default under the Promissory Note, and at any time thereafter upon five business days prior notice of such occurrence, the Lender shall be entitled to exercise its rights and remedies in accordance with the Promissory Note.  Section 15 of the Promissory Note defines an Event of Default as the occurrence and continuation without cure for 10 Business Days after receipt of written notice thereof from Lender to Borrower of any one or more of the events enumerated in Section 15.

14.     The proposed loan is the result of good faith, arms' length negotiations. The Lender has acted in good faith and the Lender is entitled to the protections of 11 U.S.C. § 364(c).  Any applicable stay of the Order, including under Bankruptcy Rule 6004(h), should be waived.

15.     Good cause exists for the entry of an Interim Order pursuant to Bankruptcy Rule 4001(c)(2) because Debtor and its estate will suffer immediate and irreparable harm in the event it is unable to incur debt from Lender and execute and deliver to Lender the Promissory Note for the reason that Lender will be unable to conclude its agreement for Exit Financing by March 10, 2010.

WHEREFORE, Debtor requests the entry of an order granting the relief requested herein, and such other and further relief as the Court may deem proper.

DATED:  February 23, 2010.

TONKON TORP LLP

By /s/ Albert N. Kennedy
    Albert N. Kennedy, OSB No. 821429
    Direct Dial:     (503) 802-2013
    Timothy J. Conway, OSB No. 851752
    Direct Dial:     (503) 802-2027
    Attorneys for Debtor

# EXHIBIT 1
# (Proposed Order)

**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial: (503) 802-2013
    Facsimile: (503) 972-3713
    E-Mail: al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
    Direct Dial: (503) 802-2027
    Facsimile: (503) 972-3727
    E-Mail: tim.conway@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

      Attorneys for Debtor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.,** (the Consolidated Sunwest Related Entities), | Bankruptcy Court Case No. 08-36637-tmb11 (Reference Withdrawn) |
| Debtor. | **ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364, RULES 2002, 4001 AND 9015 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING INCURRENCE BY THE DEBTOR OF POST-PETITION INDEBTEDNESS WITH ADMINISTRATIVE PRIORITY** |

THIS MATTER having come before this Court upon motion (the "**DIP Motion**") by

Stayton SW Assisted Living, L.L.C. ("**Debtor**""), as substantively consolidated debtor and

debtor-in-possession in the above-captioned Chapter 11 case (the "**Case**") seeking, among other

things, entry of an order (this "**Order**") authorizing Debtor and Sunwest Management, Inc. (collectively "Borrower") to:

(i)     Obtain and incur debt, pursuant to 11 U.S.C. § 364(b), in the amount of $500,000, on terms and conditions described in the Promissory Note (as defined below) and this Order with such obligations having administrative expense priority, as provided in Sections 364(b) and 503(b)(1) of Chapter 11 of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**");

(ii)     (a) Execute and deliver a Promissory Note, substantially in the form annexed to the DIP Motion, to AEW Partners VI SW Investments LLC, as lender ("**Lender**") (as same may be amended, modified or supplemented and in effect from time to time, the "**Promissory Note**")[1]; and (b) incur the "**Obligations**" under and as defined in the Promissory Note (collectively, the "**DIP Obligations**");

(iii)     Use the proceeds of the Promissory Note in a manner consistent with the terms and conditions of the Promissory Note for working capital;

(iv)     Grant, pursuant to Section 364(b) of the Bankruptcy Code, Lender an administrative claim in respect of all DIP Obligations as provided herein;

(v)     Request this Court to vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Promissory Note and this Order; and

(vi)     Request this Court to waive any applicable stay (including under Federal Rule of Bankruptcy Procedure 6004(h)) and provide for the immediate effectiveness of this Order.

---

[1] Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreement.

The Court having considered the DIP Motion and the Promissory Note; and the Court having held a hearing to consider the relief requested in the DIP Motion (the "**Hearing**"); and due and proper notice of the DIP Motion and the Hearing having been given under the circumstances; and it appearing that approval of the relief requested in the DIP Motion is necessary, appropriate and is otherwise fair and reasonable and in the best interests of Borrower, its creditors and estate, and otherwise being essential for Borrower to maximize the value of its assets; and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

    A.    <u>**Background**</u>

Prior to December 1, 2008, Debtor and Sunwest Management, Inc. were part of a group of hundreds of related entities involved in the acquisition, development, design, construction, financing, insuring and operation of senior living and other properties, assets and operations (the "**Sunwest Enterprise**").  On December 1, 2008, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**").

On March 2, 2009, the United States Securities and Exchange Commission ("**SEC**") commenced an action in the United States District Court for the District of Oregon (the "**Court**") against Sunwest Management, Inc. and other persons and entities for, among other things, violation of federal securities laws and seeking an injunction and appointment of a receiver in *SEC v. Sunwest Management, Inc., et al.,* U.S. District Court No. 09-cv-6056-HO ("**SEC Enforcement Action**").  On March 10, 2009, the Court entered its Order in the SEC

Enforcement Action granting an injunction and the appointment of Michael Grassmueck as Receiver ("**Receiver**") and Clyde Hamstreet as Chief Restructuring Officer ("**CRO**") of the Receivership Entities as defined therein that were part of the Sunwest Enterprise ("**Receivership Entities**").

On October 2, 2009, in the SEC Enforcement Action, the Court entered its Order (the "**Approval Order**") approving the Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise ("**Distribution Plan**"). The Court also entered Findings of Fact and Conclusions of Law. The Court recognized that the Receivership Entities were operated as a unitary enterprise that did not respect the legal separateness of the various entities, and the Court ordered that the assets and liabilities of the Receivership Entities be consolidated into the bankruptcy estate of Debtor and reorganized in this bankruptcy case.

On October 2, 2009, the consolidated schedules of assets and liabilities and the consolidated statement of financial affairs for the Receivership Entities were filed in this bankruptcy case.

On November 12, 2009, Debtor, the Tenants in Common Committee (the "**TIC Committee**") and the Unsecured Creditors Committee filed with the Court a Joint Motion for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities ("**Consolidation Motion**"). The Consolidation Motion was granted by Order of the Court entered on December 22, 2009 ("**Consolidation Order**"). The Consolidation Order provided that all assets and liabilities of the entities identified therein ("**Sunwest Entities**") are substantively consolidated into Debtor's bankruptcy estate, that equitable title to real property held by all Sunwest Entities is consolidated in Debtor's bankruptcy estate, and that Debtor shall have the

right to convey title to or interests in real property pursuant to a confirmed plan of reorganization or other order of the Court.

Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Case.

B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby. Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Consent**. Both the Creditors' Committee and the TIC Committee support and consent to the relief sought in the DIP Motion and entry of this Order.

D. **Notice**. The Hearing is being held pursuant to the authorization of Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Under the circumstances, such notice of the Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with Sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d), and the local rules of the Court.

E. **Findings Regarding Post-Petition Financing**. An immediate need exists for Borrower to obtain funds evidenced by the Promissory Note for purposes which will preserve the value of Borrower's estate.

F. **Use of Proceeds of the DIP Facility**. The funds shall be used in a manner consistent with the terms and conditions of the Promissory Note.

G. **Extension of Financing**. In accordance with this Order and in reliance therein, Lender has indicated a willingness to provide financing to Borrower in accordance with the

Promissory Note and subject to (i) the entry of this Order, and (ii) findings by the Court that such financing is essential to Borrower's estate, that Lender is a good faith financier, and that Lender's administrative claims and other protections granted pursuant to the Order and the Promissory Note will not be affected by any subsequent reversal, modification, vacatur or amendment of the Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

H.        **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the Promissory Note are fair, reasonable, and the best available under the circumstances, reflect Borrower's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The Promissory Note was negotiated in good faith and at arms' length between Borrower and Lender.  The proceeds to be extended under the DIP Facility will be used for valid business purposes.  Consequently, Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

I.        **Relief Essential; Best Interest**.  The relief requested in the DIP Motion is necessary, essential, and appropriate to maximize the value of Borrower's assets and personal property.  It is in the best interest of Borrower's estate to be allowed to incur debt, and execute and deliver the Promissory Note as contemplated by the DIP Motion.

J.        **Entry of Order**.  For the reasons stated above, Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of Debtor and the record before this Court with respect to the DIP Motion, and with the consent of Debtor, Borrower, Lender, the TIC Committee and the Creditors' Committee to the form and entry of this Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Order and the Promissory Note.

2.     **Promissory Note.**

(a)     **Approval of Entry Into Promissory Note**.  The Promissory Note is hereby approved.  Borrower is expressly and immediately authorized, empowered and directed to execute and deliver the Promissory Note and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Order and the Promissory Note, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by Borrower under the Promissory Note.  Borrower is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the Promissory Note and this Order, as applicable, as such become due, which amounts shall not otherwise be subject to approval of this Court.

(b)     **Authorization to Borrow**.  Debtor is hereby authorized under the Promissory Note to borrow the amount of $500,000.

(c)     **Application of DIP Proceeds**.  The proceeds of the DIP Facility shall be used solely to fund working capital in a manner consistent with the terms and conditions of the Promissory Note.

(d)     **Enforceable Obligations**.  The Promissory Note shall constitute and evidence the valid and binding obligations of Borrower, which obligations shall be enforceable against Borrower, its estate and any successor thereto, and their creditors, in accordance with their terms.

(e) **Protection of Lender and Other Rights**.  Borrower shall use the proceeds of the extensions of credit only for the purposes specifically set forth in the Promissory Note and this Order.

(f) **Administrative Claim Status**.  All DIP Obligations shall be an allowed administrative expense claim (the "**DIP Administrative Claim**") regardless of whether this Case is converted to one under Chapter 7 of the Bankruptcy Code or in any other proceedings related to the foregoing (any "**Successor Cases**") under Sections 364(b) and 503(b) of the Bankruptcy Code.

3. **Authorization to Use Proceeds of DIP Financing Agreement**.  Pursuant to the terms and conditions of this Order and the Promissory Note, Borrower is authorized to use the advances under the DIP Financing Agreement during the period commencing immediately after the entry of this Order and terminating upon the Commitment Termination Date (as defined below).

4. **Proceeds of Subsequent Financing**. If at any time prior to the full payment of the DIP Obligations, Borrower, Debtor, its estate, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the Promissory Note, then all of the cash proceeds derived from such credit or debt shall immediately be applied to reduce the DIP Obligations until the full payment of such DIP Obligations.

5. **Termination Date**.  All (i) DIP Obligations shall be immediately due and payable, and (ii) authority to use the proceeds of the Promissory Note shall cease, on the earliest to occur of (the "**Termination Date**"):  (a) the date that is one year following the date on which funds the Promissory Note is executed and funds are disbursed to Debtor pursuant to the

Promissory Note; (b) the date on which a Chapter 11 plan of reorganization for Borrower becomes effective; and (c) the occurrence of a DIP Order Event of Default (defined below), subject to applicable cure periods, if any.

6. **Events of Default**.  The occurrence of any of the following events shall constitute an event of default under this Final Order (a "**DIP Order Event of Default**"):

       (a)     Failure by Debtor to comply with any term of this Order; or

       (b)     An Event of Default (as defined in the Promissory Note).

7. **Rights and Remedies Upon DIP Order Event of Default.**

       (a)     Any automatic stay otherwise applicable to Lender is hereby modified so that after the occurrence of any DIP Order Event of Default and at any time thereafter upon five (5) business days' prior written notice of such occurrence, in each case given to each of counsel for Debtor, Borrower, the Creditors' Committee, and the TIC Committee, Lender shall be entitled to exercise its rights and remedies in accordance with the Promissory Note.

       (b)     In any exercise of their rights and remedies upon a DIP Order Event of Default, Lender is authorized to proceed under or pursuant to the Promissory Note.

       (c)     The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified pursuant to the terms of this Order as necessary to (1) permit Borrower to incur all liabilities and obligations to Lender under the Promissory Note and this Order as applicable, (2) authorize Lender to retain and apply payments hereunder, and (3) otherwise permit Lender to take any action expressly permitted in this Order.

       (d)     Nothing included herein shall prejudice, impair, or otherwise affect Lender's rights to seek any other or supplemental relief in respect of Borrower's or Lender's

rights, as provided in the Promissory Note, to suspend or terminate the making of loans under the Promissory Note.

8.      **Proofs of Claim**.  Lender will not be required to file proofs of claim in these Cases or any Successor Case.  Borrower's stipulations as set forth herein shall constitute a proof of claim on behalf of Lender.

9.      **Other Rights and Obligations**.

(a)      **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of This Final Order**.  Lender has acted in good faith in connection with the Order and its reliance on each is in good faith.  Based on the findings set forth in this Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the Promissory Note contemplated by this Order, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to Lender hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Administrative Claim granted to Lender shall be governed in all respects by this Order and Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Administrative Claim granted herein, with respect to any such claim.

(b)      INTENTIONALLY OMITTED

(c)      **Binding Effect**.  The provisions of this Order shall be binding upon and inure to the benefit of Lender and Borrower.  Any successors or assigns of Debtor and Borrower

(including any trustee or other fiduciary hereinafter appointed as a legal representative of Debtor or with respect to the property of the estates of Debtor and Borrower) whether in this Case, Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 case, shall be bound by the provisions of this Order.

(d)     **No Waiver**.  The failure of Lender to seek relief or otherwise exercise its rights and remedies under the Promissory Note, the Order, or otherwise, as applicable, shall not constitute a waiver of any of Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair Lender's rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of Lender to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Case, or the appointment of a trustee in the Case, (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a plan of reorganization or plan of liquidation for Debtor (a "**Plan**"), or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of Lender.

(e)     **No Third Party Rights**.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(f)     **Amendment**.  Lender and Borrower may enter into waivers, consents and amendments with respect the Promissory Note without the need for further Court approval provided that:  (i) notice is given to the Unsecured Creditors Committee and the TIC Committee, and (ii) such amendment, consent or waiver, in the reasonable judgment of Borrower and Lender, is both non-prejudicial to the rights of third parties and is not material.  Except as

otherwise provided herein, no waiver, consent, modification or amendment of any of the provisions of this Order or the Promissory Note shall be effective unless set forth in writing, signed by or on behalf of Borrower and Lender.

(g)     **Survival of Orders**.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case(s) under Chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Cases, (iv) withdrawing the reference of any of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The DIP Obligations shall not be discharged by the entry of an order confirming a Plan.

(h)     **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Promissory Note and this Order, the provisions of this Order shall govern and control.

(i)     **Objections Overruled**.  All objections to the DIP Motion, to the extent not withdrawn or resolved, are hereby overruled.

(j)     **No Waivers or Modification of Final Order**.  Borrower irrevocably waives any right to seek any modification or extension of this Order without the prior written consent of Lender, and no such consent shall be implied by any other action, inaction or acquiescence of Lender.

(k)     **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

10. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order and the Promissory Note.

SO ORDERED by the Court this _____ day of February, 2010

_____
The Honorable Michael R. Hogan
United States District Judge

Submitted by:

TONKON TORP LLP

By _____
Albert N. Kennedy, OSB No. 821429
Direct Dial: (503) 802-2013
Timothy J. Conway, OSB No. 851752
Direct Dial: (503) 802-2027
Attorneys for Debtor

034618/00002/2038085v2

# EXHIBIT A

## PROMISSORY NOTE

$500,000.00                                                 New York, New York
February __, 2010

FOR VALUE RECEIVED, SUNWEST MANAGEMENT, INC., ("Sunwest") an Oregon limited liability company, as substantively consolidated in the Case (defined below) under Chapter 11 of the Bankruptcy Code (defined below) and, STAYTON SW ASSISTED LIVING, L.L.C. (together with Sunwest, hereinafter called the "Borrower"), debtor and debtor-in-possession in the substantively consolidated Case each promise to pay to the order of AEW Partners VI SW Investments LLC (hereinafter called the "Lender"), at its office at World Trade Center East, Two Seaport Lane, Boston, MA 02210, or at such other place as the holder of this Promissory Note (this "Note") may from time to time designate in writing, the principal sum of up to FIVE HUNDRED THOUSAND ($500,000) DOLLARS  (the "Loan").

1.    Definitions.  As used herein, the following terms have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Adverse Bankruptcy Action" means any action (a) to challenge the validity, amount, priority, perfection or enforceability of the Lender's claims granted in connection with this Note; (b) to invalidate, set aside, avoid or subordinate in whole or in part any of the Lender's claims or to hinder or delay the Lender in any material respect in asserting or enforcing its claims; (c) to commence any action or proceeding on any claims, cause of action or defenses against the Lender or its officers, directors, employees, agents, attorneys, affiliates, assigns or successors, including without limitation any attempt to recover on an action taken by or on behalf of the Borrower, its bankruptcy estate, a bankruptcy trustee or a statutory committee under chapter 5 or section 724(a) of the Bankruptcy Code and proceeds thereof; or (d) that has or could have the effect of materially and adversely modifying or comprising the rights and remedies of the Lender or that is contrary, in a manner that is material and adverse to the Lender, to any term or condition set forth in this Note, or the Financing Order.

"Bankruptcy Code"  means title 11 of United States Code, as amended from time to time.

"Business Day" means a day of the year on which banks are not required or authorized to close in New York City.

"Case" means the bankruptcy case pending in the United States District Court for the District of Oregon under USDC Case No. 09-CV-6082-HO.

"Closing Date" means the date on which the Loan is made hereunder on or after the date of this Note.

"Court" means the United States District Court for the District of Oregon presiding over the Case.

"Debtor" means Sunwest Management, Inc. and Stayton SW Assisted Living, L.L.C. as substantively consolidated pursuant to the order of the Court entered on December 22, 2009 in the Case (Docket No. 733).

"Dispositive Bankruptcy Action" means any of the following actions: (a) to dismiss the Case; (b) to convert the same to a case under Chapter 7 of the Bankruptcy Code; (c) seeking the appointment of a trustee or an examiner with enlarged powers to operate the Borrower's business; or (d) to stay, vacate or modify the Financing Order without the Lender's consent.

"Event of Default" has the meaning specified in Section 14.

"Financing Order" means an order of the Court pursuant to section 364 of the Bankruptcy Code, approving this Note and any other loan documents and authorizing the incurrence by the Borrower of post-petition Indebtedness in accordance with this Note, as to which no stay has been entered and which has not been reversed, modified, vacated or overturned, and which is in form and substance satisfactory to the Lender.

"Governmental Authority" means any nation, sovereign or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Indebtedness" means all liabilities, obligations and indebtedness of the Borrower to any Person, of any kind or nature, now or hereafter owing, arising, due or payable, howsoever evidenced, created, incurred, acquired, or owing, whether primary, secondary, direct, or indirect, contingent, fixed, or otherwise, consisting of indebtedness for borrowed money or the deferred purchase price of property.

"Lien" means any mortgage, deed of trust, pledge, assignment, charge, deposit arrangement, encumbrance, lien (statutory or other), security interest or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever intended to assure payment of any Indebtedness or other obligation.

"Loan" has the meaning specified in the preamble.

"Maturity Date" means the earliest of: (a) the date that is one year from the Closing Date; (b) the date on which a Chapter 11 plan of reorganization for the Borrower becomes effective; and (c) the occurrence of an Event of Default, subject to applicable cure periods, if any.

"Maximum Credit" means $500,000.

"Obligations" means the Loan and all other amounts, obligations, covenants and duties owing by the Borrower to the Lender of every type and description, arising under this Note, on or after the Closing Date, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and however acquired, including all fees, interest, charges, expenses, attorneys' fees and disbursements and other sums chargeable to the Borrower under this Note.

"Person" means an individual, partnership, corporation, joint stock company, estate, trust, limited liability company, unincorporated association, joint venture or other entity or a Governmental Authority.

"Petition Date" means October 2, 2009.

HF 5643822v.2 #03428/0012

"Plan Funding Agreement" means that certain agreement, dated February [ ], 2010 (also sometimes referred to herein as the "PFA"), made by and among, *inter alia*, Stayton SW Assisted Living, L.L.C., and Lender under which the Lender agrees to make a preferred equity investment of a minimum of $50 million up to a maximum of $100 million, subject to satisfaction of various conditions in certain circumstances, in the reorganized Debtor pursuant to the terms of the Term Sheet (as defined in the PFA).

"Requirements of Law" means all federal, state, local and foreign laws, rules and regulations, orders, judgments, decrees and other legal requirements or determinations of any Governmental Authority or arbitrator, applicable to or binding upon the Borrower or any of its property or to which the Borrower or any of its property is subject.

"Restricted Payment" means (a) any dividend or other distribution, direct or indirect, on account of any stock of the Borrower now or hereafter outstanding, and (b) any redemption, retirement, sinking fund or similar payment, purchase or other acquisition for value, direct or indirect, of any stock of the Borrower now or hereafter outstanding.

"UCC" means the Uniform Commercial Code (or any successor statute) as in effect from time to time of the State of New York or of any other state the laws of which are required as a result thereof to be applied in connection with the issue of perfection of security interest, provided, that to the extent that the UCC is used to define any term herein that is defined differently in different Articles of the UCC, the definition of such term contained in Article 9 of the UCC shall govern.

2.     Referenced DIP Agreement.  This Note is the DIP Credit Agreement referenced in the Financing Order.  This Note shall not be effective, and the Borrower and the Lender shall not have any obligations or rights hereunder, unless and until the conditions precedent described below have been satisfied.

3.     Advances.  On the terms and conditions contained in this Note as provided for in and subject to the Financing Order, the Lender agrees to make the Loan in a single advance to the Borrower.

4.     Borrowing Procedures.  The full amount of the Loan shall be made to the Debtor on the Closing Date.

5.     Repayment of Loan.

(a)     All principal plus accrued interest and any other sums payable hereunder shall be repaid in full upon the Maturity Date.  The Borrower may make voluntary prepayments of the Loan to the Lender, without premium or penalty.  Any prepayment by the Borrower shall be applied first to any unpaid interest then due and owing and then to repay the outstanding principal balance of the Loan until the Loan is repaid in full.  All repayments of principal of the Loan by the Borrower hereunder shall result in a permanent reduction of the Maximum Credit. Whenever any payment hereunder shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

3

(b)     At Lender's option, the Lender's claim against the Borrower on account of the Obligations may be converted to equity interests in the Debtor pursuant to the Plan Funding Agreement and the plan of reorganization contemplated thereby.

6.     <u>Evidence of Debt</u>.  The Lender shall maintain an account evidencing the indebtedness of the Borrower to the Lender resulting from the Loan, including the amounts of principal and interest payable and paid to the Lender from time to time.  The entries maintained in the account shall, to the extent permitted by applicable law, be *prima facie* evidence of the existence and amounts of the obligations recorded therein; provided, however, that the failure of the Lender to maintain such account or any error therein shall not in any manner affect the obligations of the Borrower to repay the Loan in accordance with the terms set forth herein.

7.     <u>Interest</u>.

(a)     The Borrower shall pay interest on the outstanding principal amount of the Loan, from and including March 10, 2010 until the date on which the Loan is fully paid in full at a rate equal to seven percent (7%) per annum. Interest accrued on the Loan shall be payable quarterly in arrears and if not previously paid in full, at maturity (whether by acceleration or otherwise) of such Loan.  Notwithstanding the rate of interest specified above, effective immediately upon the occurrence of an Event of Default, and for as long thereafter as such Event of Default shall be continuing, the principal balance of the Loan shall bear interest at a rate equal to ten percent (10%) per annum.  The interest rate shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days in each period for which interest is charged.

(b)     Notwithstanding any other provision to the contrary set forth herein, if at any time implementation of any provision hereof shall raise the interest rate hereon above the lawful maximum, if any, in effect from time to time in the applicable jurisdiction, then any such interest collected shall be deemed to be a partial prepayment of principal and so applied.

8.     <u>Lender Input</u>.  Borrower agrees that so long as any of the Obligations remain unpaid, (a) Lender may discuss, and provide advice with respect to, Borrower's business operations, properties and financial and other conditions with Borrower's officers, employees and directors; and (b) Lender may make proposals or suggestions to Borrower's senior management from time to time and one or more members of such senior management will discuss such proposals or suggestions with Lender within a reasonable period after such submission.

9.     <u>Lender Access</u>.  Borrower hereby agrees that so long as any of the Obligations remain unpaid, (a) Lender may visit Borrower's business premises and other properties during normal business hours and upon reasonable notice; and (b) Borrower shall provide copies of all financial statements, operating reports, budgets or other financial reports that are publicly filed hereafter and such other financial documents that Lender may reasonably request and Lender may, upon reasonable notice, examine Borrower's books and records.

10.     <u>Administrative Claim Status</u>.  All Obligations shall be an allowed administrative expense claim (the **"DIP Claim"**) with priority in the Case and any successor case which occurs upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or in any other

proceedings related to any of the foregoing (any **"Successor Cases"**), under sections 364(b) and 503(b) of the Bankruptcy Code.

11.    <u>Conditions to Lend</u>**.**  The obligation of the Lender to make the Loan requested to be made by it on the Closing Date and thereafter is subject to the satisfaction of all of the following conditions precedent**:**

(i)    The Financing Order shall have been entered on or before 5:00 p.m. (New York City time) on March _____, 2010, shall be in effect and not the subject of any stay of its effectiveness, and shall be in form and substance acceptable to the Lender; and the Financing Order shall contain a finding that the debt incurred and liens granted hereunder were made in good faith pursuant to Section 364(e) of the Bankruptcy Code.

(ii)    No party in interest shall have commenced an Adverse Bankruptcy Action or a Dispositive Bankruptcy Action that shall remain uncontested.

(iii)    No Event of Default shall have occurred and remain uncured beyond the applicable cure period, if any.

(iv)    The Borrower shall have provided all information to the Lender required hereunder, and such information shall be in form and substance acceptable to the Lender.

(v)    The Borrower shall be in compliance with all terms, provisions, conditions and covenants of this Note.

(vi)    Each of the representations and warranties contained herein remain true and correct.

12.    <u>Representations and Warranties of Borrower</u>.  Borrower hereby represents and warrants to Lender as follows:

(a)    <u>Authorization</u>.  Subject to the entry of the Financing Order, the execution, delivery and performance by Borrower of this Note have been duly and validly authorized by all necessary corporate or other action.  This Note constitutes the legal, valid and binding obligations of Borrower and is enforceable against Borrower in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency and other similar laws affecting the enforcement of creditors' rights generally.

(b)    <u>Priority Obligations</u>.  Pursuant to section 364(b) of the Bankruptcy Code and the Financing Order, all obligations of the Borrower will constitute allowed administrative expense claims.

(c)    <u>Use of Proceeds</u>.  The Borrower may use Loan proceeds only to operate its business during the Chapter 11 Case to fund post-petition operating expenses of the Borrower incurred in the ordinary course of business, and for working capital and other general corporate purposes of the Borrower not in contravention of any laws or of the Financing Order.  Nothing herein shall in any way prejudice or prevent the Lender from objecting, for any reason, to any requests, motions or applications made in the Bankruptcy Court, including any applications for

interim or final allowances of compensation for services rendered or reimbursement of expenses incurred under sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest.

13.    Affirmative Covenants of Borrower.  Borrower makes the following covenants to Lender for so long as any principal, interest or any other sums payable hereunder remains outstanding under this Note, upon which Lender is relying hereunder:

(a)    Payments Under This Note, Etc.  The Borrower will make punctual payment of all of its financial obligations under this Note and will faithfully and fully keep and perform all of the terms, conditions, covenants and agreements contained on the Borrower's part to be paid, kept or performed under this Note.

(b)    Compliance with Laws, Etc.  The Borrower shall comply with all applicable Requirements of Law (including the Employee Retirement Income Security Act, the Bankruptcy Code, the Bankruptcy Rules and any order of the Court).

(c)    Notices.  The Borrower will advise the Lender in the event that the Borrower receives notice or actual knowledge that: (i) except for the Case, and proceedings and matters arising in or related to the Case, the  Borrower is party to litigation of which the Borrower has not previously informed the Lender; (ii) the Borrower is in default in the performance of any obligation to which it first became bound after the Petition Date and of which it has not informed the Lender; (iii) the Borrower has not paid any tax when due except those disclosed in Borrower's schedules filed in the Case or of which it has informed the Lender; (iv) the Borrower is not in compliance with any applicable law, regulation or court order; or (v) the Borrower has a material liability not reflected in its financial statements or pleadings or schedules filed in the Case.

(d)    Payment of Taxes.  The Borrower shall pay and discharge before the same shall become delinquent, all lawful governmental claims, taxes, assessments, charges and levies first arising after the Petition Date, except where contested in good faith, by proper proceedings and adequate reserves therefore have been established on the books of the Borrower in conformity with Generally Accepted Accounting Principles as in effect in the United States of America. Subject to the substantive consolidation, the loan is being made to Sunwest and shall be an obligation of Sunwest for tax and other similar purposes.

(e)    Use of proceeds.  The Borrower shall use the entire amount of the proceeds of the Loan as provided in Section 12(c).

14.    Negative Covenants of the Borrower.

(a)    Debt, Liens, Etc.  The Borrower will not, directly or indirectly: (i) create, incur, assume or otherwise become or remain liable with respect to any Indebtedness except (a) the Obligations; (b) the Indebtedness existing on the date hereof; and (c) any Indebtedness incurred in the ordinary course of the Borrower's business or authorized by Order of the Court and paid promptly pursuant to the terms thereof; (ii) prepay or accelerate the payment of any Indebtedness to any Person other than the Lender; (iii) create or suffer to exist any Lien upon or with respect to any of its properties or assets, whether now owned or hereafter acquired, except Liens existing

on the date of this Note; or (iv) guarantee or otherwise become responsible for the debt of any other Person.

(b) <u>Limitation on Fundamental Changes</u>. The Borrower shall not, without the Lender's consent or Court Order, (i) except as provided in the order entered in the Case on December 22, 2009 (Docket No. 733), merge or consolidate with or into any other firm or corporation, dissolve or liquidate; (ii) convey, sell, lease or otherwise dispose of all or substantially all of its property, assets or business; (iii) change its corporate name; (iv) acquire any other entity; (v) make any change to its senior management; or (vi) make any change in its capital structure (including in the terms of its outstanding stock) or otherwise amend its organizational documents or in any of its business objectives, purposes and operations.

(c) <u>Restricted Payments</u>. The Borrower will not, directly or indirectly, declare, order, pay, make or set apart any sum for any Restricted Payment, except Restricted Payments (i) which are made pursuant to authority granted by an order of the Court which is in full force and effect, as to which no stay has been entered and which has not been reversed, modified, vacated or overturned, or (ii) which are made in the ordinary course of business; <u>provided</u>, <u>that</u>, no such payment shall be made after the occurrence and during the continuance of an Event of Default.

(d) <u>Bankruptcy Actions</u>. The Borrower will not: (i) take, or suffer to remain uncontested for more than five (5) Business Days (or, if less, the relevant deadline to contest such action) any Adverse Bankruptcy Action; (ii) file, or suffer to remain uncontested for more than five (5) Business Days (or, if less, the relevant deadline to contest such action) any pleading, motion application or other paper seeking to effectuate a Dispositive Bankruptcy Action; (iii) create, assume, suffer to exist or permit any administrative expense, unsecured claim, other super-priority claim which is *pari passu* with or senior to the claims of the Lender, or apply to the Court for authority to do so.

15. <u>Default</u>.

(a) <u>Events of Default</u>. The occurrence and continuation without cure for ten (10) Business Days after receipt of written notice thereof from Lender to Borrower of any one or more of the following events or conditions shall constitute an "<u>Event of Default</u>" under this Note:

Any event which gives rise to a right of the Lender to terminate the Plan Funding Agreement as "Investor" thereunder pursuant to Section 8 (except Section 8.1(d)) thereof.

Any "Event of Default" under the Financing Order.

Failure to make any payment of principal, interest or any other Obligation as and when due pursuant to the terms and conditions of this Note.

Any warranty or representation or other statement made or furnished to the Lender by or on behalf of the Borrower herein or in any document or instrument furnished in

7

connection herewith proves to have been false or misleading in any material respect when made or furnished.

Breach of, or failure in, the due observance or performance of any covenant, condition or agreement on the part of the Borrower to be observed or performed pursuant to this Note.

The pursuit by the Borrower of an Adverse Bankruptcy Action or a Dispositive Bankruptcy Action.

The entry and becoming final of an order granting an Adverse Bankruptcy Action or a Dispositive Bankruptcy Action.

The issuance, filing or levy against the Borrower of an attachment, injunction, execution, tax lien or judgment for the payment of money which is not discharged in full or stayed within thirty (30) days after issuance, filing or levy.

The entry of an order directing the appointment of a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or of any examiner with enlarged power to operate the Borrower's business.

(b)     Remedies.  In addition to any other remedy set forth or permitted hereunder or in the Financing Order, during the continuance of any Event of Default, without further order of, application to, or action by the Court, the Lender may declare the Loan, all interest thereon and all other amounts and Obligations payable under this Note to be forthwith due and payable, whereupon the Loan, all such interest and all such amounts and Obligations shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower.

16.     Miscellaneous Provisions.

(a)     Amendment, Waivers, Etc.  No amendment or waiver of any provision of this Note or any other loan document nor consent to any departure by the Borrower therefrom shall in any event be effective unless the same shall be in writing and signed by the Lender, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(b)     Costs and Expenses.  Borrower shall pay all reasonable out-of-pocket expenses of Lender (including the fees, disbursements and other charges of counsel) in connection with the collection or enforcement of any of the Obligations or the enforcement of this Note.

(c)     Indemnities.  Lender (and its affiliates and their respective officers, directors, employees, advisors and agents) will have no liability for, and will be indemnified and held harmless against, any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party).

HF 5643822v.2 #03428/0012

(d)     Waiver of Right to Trial by Jury.  The Borrower and the Lender hereby waive the right to trial by jury in any action or proceeding of any kind or nature in any court in which an action may be commenced arising out of this Note or by reason of any other cause or dispute between the Borrower and the Lender.

(e)     Jurisdiction.  The Borrower and the Lender hereby agree that the Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the Borrower and the Lender pertaining directly or indirectly to the Loan, this Note or to any matter arising therefrom, and if the Court does not have (or abstains from) jurisdiction, then the State and Federal Courts of the State of New York shall have non-exclusive jurisdiction.

(f)     No Waiver; Rights Cumulative.  The Borrower agrees that no delay or failure on the part of the holder in exercising any power, privilege, remedy, option or right hereunder shall operate as a waiver thereof or of any other power, privilege, remedy or right; nor shall any single or partial exercise of any power, privilege, remedy, option or right hereunder preclude any other or future exercise thereof or the exercise of any other power, privilege, remedy, option or right. The rights and remedies expressed herein are cumulative, and may be enforced successively, alternately, or concurrently and are not exclusive of any rights or remedies which holder may or would otherwise have under the provisions of all applicable laws, and under the provisions of all agreements between the Borrower and the Lender.

(g)     Binding Effect.  All rights and obligations of the Lender hereunder shall inure to the benefit of and be binding upon its successors and assigns, and all the obligations of the Borrower contained in this Note shall bind the successors and permitted assigns of the Borrower.

(h)     Governing Law.  This Note shall be governed and construed in accordance with the laws of the State of New York, without reference to its conflict of laws principles (other than Section 5-1401 of the General Obligations Law of the State of New York), and the Bankruptcy Code.

(i)     Severability.  If any provision of this Note or application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Note or the application of such provision to persons, entities or circumstances other than those as to which it is held invalid, shall not be affected thereby and each provision of this Note shall be valid and enforceable to the fullest extent permitted by law.

(j)     Assignment; Restrictions on Transfer.  The rights and obligations of the Borrower set forth herein may not be assigned or delegated by the Borrower without the prior written consent of the Lender. This Note may not be transferred or assigned by Borrower to any person or entity without the prior written consent of the Lender.   The Lender may sell, transfer, negotiate or assign to one or more Persons all or a portion of its rights and obligations hereunder (including all of its rights and obligations with respect to the Loan), all without the consent of the Borrower.

(k)     Notices.  All notices, requests and other communications given or made pursuant hereto to any party hereunder shall be in writing (including facsimile or similar writing) and shall be given:

HF 5643822v.2 #03428/0012

|                      |                                          |
|----------------------|------------------------------------------|
| if to Lender, to:    | AEW Partners VI SW Investments LLC       |
|                      | Attention: Anthony C. Crooks             |
|                      | Attention: James J. Finnegan, Esq.       |
|                      | World Trade Center East                  |
|                      | Two Seaport Lane                         |
|                      | Boston, MA 02210                         |
|                      | Tel.:   617-261-9287                     |
|                      | Fax:   617-261-9555                      |
|                      |                                          |
| with a copy to:      | Herrick, Feinstein LLP                   |
|                      | 2 Park Avenue                            |
|                      | New York, New York 10016                 |
|                      | Attention: Andrew Gold                   |
|                      | Facsimile: (212) 592-1500                |
|                      |                                          |
| if to the Borrower, to: | Sunwest Management, Inc.              |
|                      | c/o Clyde A. Hamstreet                    |
|                      | Clyde A. Hamstreet & Associates LLC      |
|                      | One SW Columbia, Suite 1000              |
|                      | Portland, OR 97258                       |
|                      | Tel.:   503-223-6222                     |
|                      | Fax:   503-546-6579                      |
|                      |                                          |
| with a copy to:      | Albert N. Kennedy, Esq.                  |
|                      | Tonkon Torp LLP                          |
|                      | 888 SW Fifth Avenue, Suite 1600          |
|                      | Portland, OR 97204                       |
|                      | Tel.:   503-802-2013                     |
|                      | Fax:   503-972-3713                      |

or such other address or facsimile numbers as such party may hereafter specify for the purpose by notice to the other parties hereto. Each such notice, request or other communication shall be effective during business hours (i) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section and the appropriate facsimile confirmation is received, or (ii) if given by any other means, when delivered at the address specified in this Section.

IN WITNESS WHEREOF, this Note is executed as of the date set forth above.

SUNWEST MANAGEMENT, INC.
As debtor and debtor-in-possession


By: _____
Name:
Title:

HF 5643822v.2 #03428/0012

STAYTON SW ASSISTED LIVING, L.L.C.,
as debtor and debtor-in-possession

By: _____
Name:
Title:

034618/00002/2045238v1

HF 5643822v.2 #03428/0012

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN UNSECURED CREDIT PURSUANT TO 11 U.S.C. § 364(b)** was served on all ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

DATED:  February 23, 2010.

TONKON TORP LLP

By /s/ Albert N. Kennedy
     Albert N. Kennedy, OSB No. 821429
     Direct Dial:   (503) 802-2013
     Timothy J. Conway, OSB No. 851752
     Direct Dial:   (503) 802-2027
     Attorneys for Debtor

034618/00002/2039328v1