**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
   Direct Dial:  (503) 802-2013
   Facsimile:   (503) 972-3713
   E-Mail:      al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
   Direct Dial:  (503) 802-2027
   Facsimile:   (503) 972-3727
   E-Mail:      tim.conway@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

    Attorneys for Debtor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| In re<br><br>**STAYTON SW ASSISTED LIVING, L.L.C.,**<br>(the Consolidated Sunwest Related Entities),<br><br>    Debtor. | **USDC Case No. 09-cv-6082-HO**<br><br>Bankruptcy Court<br>Case No. 08-36637-tmb11<br>(Reference Withdrawn)<br><br>**DEBTOR'S RESPONSE TO UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT** |

    Stayton SW Assisted Living, L.L.C., Debtor, and Debtor-in-Possession

("Debtor") responds to the U.S. Trustee's ("UST") objection ("UST Objection") to Debtor's

Motion for Approval of Auction Process, Bidding Procedures, Overbid Protection, Break-Up

Fee, and Expense Requirement ("Procedures Motion"). The UST objects to the Procedures Motion on five grounds, each of which is addressed in turn below.

1. <u>First</u>, the UST objects to the Procedures Motion on the ground that the purchase and sale agreement constitutes a "*sub rosa*" plan of reorganization. As the UST notes, however, the purchase and sale agreement is itself contingent upon confirmation of a plan of reorganization. Accordingly, the bid and auction procedures create the right for the winning bidder to participate in a plan of reorganization which, if approved by this Court, will result in the sale of a substantial part of Debtor's estate. It is nothing more than a mechanism for identifying a purchaser and maximizing its bid, ensuring that the highest possible value is brought to the table as part of Debtor's plan of reorganization.

2. The Procedures Motion does not accomplish a sale by itself. Nor does it prevent the proposal and approval of another plan of reorganization by any other party. All of the rules concerning confirmation of a plan of reorganization will therefore govern. The types of concerns raised by the UST typically arise in cases where a motion under section 363 actually accomplishes a sale *without* a plan of reorganization, effectively ending the case following the sale because there are no assets left to reorganize. As described above, that is not the situation here.

3. <u>Second</u>, the UST objects to the proposed break-up fee. Buyer protections, including break-up fees and reimbursements for expenses, are "increasingly common" in transactions such as this one. 3 <u>Collier's on Bankruptcy</u> ¶ 363.02[6] (15th rev. ed. 2009). These protections are appropriate where the "prospective buyer provides something of value to the estate in exchange." Here, the Stalking Horse Bidder is setting a floor under the auction by committing to purchase the assets at a minimum price, thus facilitating the sale of the assets.

These provisions encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of Debtor's assets, despite the inherent risks and uncertainties of the Chapter 11 process. Approval of break-up fees in connection with the sale of assets pursuant to section 363 of the Bankruptcy Code has become an established practice in Chapter 11 cases. *See, e.g.*, *Calpine Corp. v. O'Brien, Envtl. Energy, Inc.*, 181 F.3d 527, 535–37 (3d Cir. 1999) (detailing situations where a breakup fee is entitled to administrative expense status under Bankruptcy Code section 593(b)(1)(A) because the fees provided a benefit to the estate); *In re Women First Healthcare, Inc.*, 332 B.R. 112, 115 (Bankr. D. Del 2005) (noting the break-up fee and other bid procedures provided benefit to the estate by encouraging a quick consummation of the deal); *In re Homelife Corp.*, 2002 WL 31115654 (D. Del. Sep. 20, 2002) (following *O'Brien*).

        4.      According to Collier's, "[c]ourts have adopted as a rule of thumb a limitation on a breakup or topping fee of about 3 percent of the consideration the buyer will pay for the assets, including assumption of liabilities, although courts have approved higher amounts, up to about 5 percent of the consideration, in unusual circumstances." *Id.*; *see also In re Global Home Products, LLC, et al.*, Case No. 06-10340 (KD) (Bankr. D. Del July 14, 2006) (order approving a break-up fee of $650,000 or 3.1% of purchase price of $21 million); *In re Women First Healthcare*, 332 B.R. at 118 (approving a break-up fee of $50,000 or 2.8% on the sale of assets worth $1.75 million); *In re Decora Indus., Inc.*, 2002 WL 32332749 (D. Del. May 20, 2002) (Farnan, J.) (approval on appeal break-up fee of $625,000 or 3% of purchase price); *In re Fruit of the Loom, Inc.*, Case No. 99-4497 (PJW) (Bankr. D. Del. Dec. 11, 2001) (approving a $25 million, or 3% of purchase price, break-up fee); *In re Caldor, Inc. – NY*, Case No. 95-B-44080 (JLG) (Bankr. S.D.N.Y. Feb. 4, 1999) (order approving break-up fees of $1,900,000 on

purchase price of $75,735,000 and $3,550,000 on purchase price of $142,000,000, or approximately 2.5%).

5.  The proposed break-up fee here is less than *one percent* of the total consideration. Debtor submits that the proposed break-up fee is supported by sound business judgment, is in the best interests of Debtor's estate, and should be approved.

6.  <u>Third</u>, the UST argues that Blackstone must share its due diligence materials. Blackstone has spent millions of dollars performing due diligence on more than a hundred facilities. Requiring it to turn over all of this information to anyone who expresses an interest, in advance and without limitation, is inappropriate. In fact, the information of primary interest to a bidder should not be turned over, including the legal analysis of Blackstone's lawyers, which are covered by privilege, and the financial analysis of Blackstone's accountants, which explicitly states that it is for Blackstone's use only and that no one else can or should rely on it. It should also be noted that the results of Blackstone's due diligence—the asset purchase agreement and the exhibits and schedules—are a part of the public record and are available for all bidders to review. Under these circumstances, Debtor respectfully submits that the Court should simply respond to any prospective bidder's request for due diligence once it is made, rather than compelling wholesale production in advance.

7.  <u>Fourth</u>, the UST objects to the amount of the initial overbid. Debtor believes that the proposed minimum overbid increment, which represents approximately two percent of the total consideration, is appropriate under the circumstances.

8.  <u>Fifth</u>, the UST objects to the overbidding credit in the amount of the break-up fee afforded to Blackstone. First, it should be noted that, even in the hypothetical situation posed by the UST concerning one competing overbid (UST Objection, 8:22–23), the

net result is still more money in Debtor's estate. Debtor submits that this term is reasonable and appropriate in the circumstances and is a necessary protection for Blackstone's efforts.

WHEREFORE, Debtor respectfully requests that the Court reject the UST's objections and grant Debtor's Procedures Motion.

DATED: March 3, 2010.

TONKON TORP LLP

By    */s/ James K. Hein*
    Albert N. Kennedy, OSB No. 821429
    Direct Dial: (503) 802-2013
    Timothy J. Conway, OSB No. 851752
    Direct Dial: (503) 802-2027
    James K. Hein, OSB No. 054621
    Direct Dial: (503) 802-2129
    Attorneys for Debtor

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEBTOR'S RESPONSE TO UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR APPROVAL OF AUCTION PROCESS, BIDDING PROCEDURES, OVERBID PROTECTION, BREAK-UP FEE AND EXPENSE REIMBURSEMENT** was served on all ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

DATED: March 3, 2010.

TONKON TORP LLP


By    */s/ James K. Hein*
    Albert N. Kennedy, OSB No. 821429
    Direct Dial: (503) 802-2013
    Timothy J. Conway, OSB No. 851752
    Direct Dial: (503) 802-2027
    James K. Hein, OSB No. 054621
    Direct Dial: (503) 802-2129
    Attorneys for Debtor

034618/00002/2064563v1