**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial:  (503) 802-2013
    Facsimile:   (503) 972-3713
    E-Mail:      al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
    Direct Dial: (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:      tim.conway@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

      Attorneys for Debtor

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.,** | Bankruptcy Court |
| (the Consolidated Sunwest Related Entities), | Case No. 08-36637-tmb11 |
| | (Reference Withdrawn) |
| Debtor. | **DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND COMPENSATION OF BROKER (Riverdale Estates)** |

Stayton SW Assisted Living, L.L.C., Debtor and Debtor-in-Possession

(collectively, "Debtor"), hereby moves this Court for entry of an order in the form of attached

Exhibit A authorizing the sale of certain property free and clear of all liens, claims,

PAGE 1 -    DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND
        CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING
        DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND
        COMPENSATION OF BROKER (Riverdale Estates)

encumbrances, and interests; approving disbursement of sale proceeds; and authorizing Debtor to employ and compensate a broker in connection therewith (the "Motion").  In support of this Motion, Debtor represents:

## **BACKGROUND**

1.      On December 1, 2008, Stayton SW Assisted Living, L.L.C. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code as a stand-alone bankruptcy filing ("Stayton").

2.      On March 2, 2009, the United States Securities and Exchange Commission ("SEC") commenced an action in the United States District Court for the District of Oregon against Sunwest Management, Inc. and other persons and entities and obtained an injunction and appointment of a receiver in *SEC v. Sunwest Management, Inc., et al.*, U.S. District Court Case No. 09-cv-6056-HO ("SEC Receivership Case").  The Court issued orders designating receivership entities that were part of the Sunwest enterprise ("Receivership Entities") which included Riverdale Senior Living, LLC, an Oregon limited liability company.

3.      On October 2, 2009 in the SEC Receivership Case, the United States District Court entered its order approving the Distribution Plan of Receiver and Chief Restructuring Officer for Sunwest Enterprise ("Distribution Plan").  The Court also entered Findings of Fact and Conclusions of Law.  The Court recognized that the Receivership Entities were operated as a unitary enterprise that did not respect the legal separateness of the various entities, and the Court ordered that the assets and liabilities of the Receivership Entities be consolidated into the bankruptcy estate of Stayton and reorganized in this case.

4.    On October 2, 2009, the consolidated schedules of assets and liabilities and the consolidated statement of financial affairs for Debtor were filed in this case reflecting the unitary nature of Debtor.

5.    On December 22, 2009, the Court entered an Order Granting Joint Motion of Debtor, the Tenants-in-Common Committee, and the Unsecured Creditors' Committee for Substantive Consolidation of Assets and Liabilities of Sunwest Related Entities ("Consolidation Order").  The Consolidation Order provided that all assets and liabilities of the entities identified therein including Riverdale Senior Living, LLC ("Sunwest Entities") are substantively consolidated into Debtor's bankruptcy estate, and that equitable title to real property held by all Sunwest Entities is consolidated in Debtor's bankruptcy estate, and that Debtor shall have the right to convey title to or interests in real property pursuant to a confirmed plan of reorganization or other order of the Court.

6.    Accordingly, Stayton holds equitable title to the Property (as defined below), although Riverdale Senior Living, LLC retains bare legal title.  Riverdale Senior Living, LLC and Stayton shall be referred to together herein as "Debtor."

7.    Certain of Debtor's properties, defined in the Distribution Plan as Holdco Properties ("Holdco Properties"), Divestco Properties ("Divestco Properties") and Trustco Properties ("Trustco Properties"), as may be designated from time to time by the CRO, are to be sold.

8.    Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of Title 11 of the United States Code.

## THE PROCEDURES ORDER

9.      On October 30, 2009, the Court entered an *Order Limiting Notice, Approving Form And Manner of Notice, and Approving Objection Procedures for Debtor's Motions to Sell Certain Properties Free and Clear of All Liens, Claims, Encumbrances, and Interests* (the "Procedures Order").

10.     In the Procedures Order, the Court approved certain notice, sale, and objection procedures for use with respect to this Motion.  The Procedures Order governs approval of, and objections to, this Motion.

11.     By filing this Motion, Debtor certifies that it has complied with the Procedures Order by serving all Notice Parties (defined in the Procedures Order and listed on the attached Certificate of Service) with this Motion and a Sale Notice in the form approved in the Procedures Order.

## THE PROPOSED SALE

12.     Debtor intends to enter into a Purchase and Sale Agreement ("Sale Agreement") with Bobby Westbrooks, an individual ("Buyer"), substantially in the form attached as Exhibit B.[1]  Under the Sale Agreement, subject to Court approval, Debtor intends to sell and Buyer intends to purchase certain real property and the improvements thereon consisting of a formerly operating 89-unit memory care/assisted living facility commonly known as Riverdale Estates located in Memphis, Tennessee, which is described more particularly in the Sale Agreement (the "Property").  Buyer will make an earnest money deposit of $45,000 with the

---

[1] Any party wishing to obtain a final copy of the fully executed Sale Agreement may do so by contacting Haley B. Bjerk, Tonkon Torp LLP, 888 SW Fifth Avenue, Suite 1600, Portland, Oregon, 97204, (503) 802-5765.

escrow agent ("Earnest Deposit").  The Sale Agreement contains a break-up fee or Termination

Fee that would authorize compensation to Buyer for reimbursement of expenses up to $25,000 in

the event that Buyer is outbid at any auction held as a result of this Motion.

13.    Pursuant to the Sale Agreement, the gross sale price of the Property is

$450,000.  U.S. Department of Housing and Urban Development as assignee from Berkadia

Commercial Mortgage LLC ("Lender") currently has a lien on the Property pursuant to a non-

recourse loan in the approximate principal amount of $4,137,451.  Additionally, there are

currently tax liens on the Property in the approximate amount of $81,504.  Debtor estimates that

the tax liens, the sale and closing costs, and broker's commission will total approximately

$151,504.  After payment of tax liens, Debtor estimates that approximately $298,496 of the

remaining sale proceeds will be distributed to Lender.  Accordingly, Debtor anticipates that the

sale will not result in any net proceeds to the estate after payment of valid liens, fees, costs, taxes

and closing expenses.

14.    Debtor utilized the services of Marcus & Millichap Real Estate Services

Corporation, Inc. ("Broker") to solicit offers for the purchase of the Property, and Broker was

instrumental in soliciting the offer from Buyer.

15.    Debtor intends to employ and compensate Broker substantially on the

terms and conditions set forth in the Exclusive Sale Listing Agreement attached hereto as

Exhibit C (the "Listing Agreement").  To the best of Debtor's knowledge, Broker has no

connections with Debtor, creditors, any other party in interest, their respective attorneys and

accountants, the United States Trustee, or any other person employed by the office of the United

States Trustee, except as otherwise set forth in the Rule 2014 Declaration of Broker that will

subsequently be filed with the Court.

PAGE 5 -    DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING
DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND
COMPENSATION OF BROKER (Riverdale Estates)

16.     Pursuant to the Listing Agreement, Debtor intends to pay Broker a commission of $50,000 or 3.0% of the purchase price, whichever is greater ("Commission") upon the closing of the sale of the Property to Buyer or to the winning bidder at any auction conducted by the Court in accordance with the Procedures Order.  However, Broker will not be entitled to the Commission if the Property is sold to the secured lender on a credit bid.

17.     Broker began marketing the Property on May 21, 2010.  At that time, the Property was no longer operating.  Accordingly, at Broker's recommendation, the Property was listed as a call for offers based on the empty vandalized building.  Broker engaged in a full-service marketing campaign designed to maximize sale proceeds and to locate potential buyers with the ability to close the transaction.  The marketing campaign included distribution of an e-brochure to over 1,500 potential buyers, contacting approximately 125 potential buyers directly, and arranging tours of the Property.  As a result of Broker's marketing efforts, Broker conducted tours of the Property with four potential buyers.  Broker received two written offers for the Property: $300,000 and $450,000.  Debtor accepted Buyer's offer of $450,000 on an "as-is where-is" basis with Buyer assuming all responsibility for deferred maintenance.

18.     The accepted offer was procured through arms-length negotiations, and Debtor believes that the accepted offer, at this time, is the best offer that Debtor will receive for the Property.  However, Debtor reserves the right to pursue higher and better offers to the extent received, and seeks as part of the Court's order authority to sell the Property to the highest or best offer received at the sale hearing held in accordance with this Motion.

19.     The sale of the Property to Buyer does not constitute a sale of substantially all of Debtor's assets.

PAGE 6 -    DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND
            CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING
            DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND
            COMPENSATION OF BROKER (Riverdale Estates)

20.     Debtor intends to sell the Property because it is no longer identified as a Holdco Property under the Plan of Reorganization and is now identified as a Divestco or Trustco Property.  Debtor seeks by this Motion to sell the Property in advance of a bankruptcy plan of reorganization in this case because any delay in closing the sale of the Property serves only to diminish Debtor's estate and increase the risk that the sale will fail before it can close.

21.     Expenses and property taxes resulting from the sale of the Property will be paid at closing or as otherwise set forth in the Sale Agreement.

22.     The lien holders on the Property and parties to be paid at closing, listed in priority order, are:

| Name | Address | Approximate Lien Amount | Treatment at Closing (i.e., Fully Pd., Partially Pd., or Not Pd.) |
|---|---|---|---|
| 1. Regina Morrison Newman, Shelby County Trustee | Regina Morrison Newman, Shelby County Trustee PO Box 2751 Memphis, Tennessee 38101-2751<br><br>City of Memphis, Treasurer PO Box 185 Memphis, Tennessee 38101-0185<br><br>Real Property Tax Acct: 093500-00446 Personal Property Tax Acct: P147085 | $81,504 | Fully Paid |
| 2. U.S. Department of Housing and Urban Development | 1670 Broadway, 22nd Floor Denver, CO 80202 Attn: Tim R. Coon<br><br>1222 Spruce Street, Room 3.203 St. Louis, MO 63103-2836 Attn: John M. Hartung | $4,137,451 | Partially Paid |

23.     Any liens not fully paid or assumed by Buyer at closing shall attach to the remaining sale proceeds (net of closing costs and prior liens) in the same order of priority that they attach to the Property.  If there are any disputes as to the priority or payment of proceeds, the disputed amounts shall be held in trust pending resolution by the Court.

## JURISDICTION

24.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157(d) and 1334.  Venue is proper under 28 U.S.C. § 1408.  The relief sought by this motion

is authorized by 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and

9014.

## RELIEF REQUESTED

25.    Debtor seeks entry of an order in the form of attached Exhibit A:

(a) approving the Sale Agreement and the transactions contemplated therein; (b) authorizing the

sale of the Property free and clear of all liens, claims, encumbrances and interests;

(c) authorizing the disbursement of the sale proceeds; (d) authorizing Debtor to employ Broker

and pay Broker the Commission; and (e) granting related relief.

26.    Debtor further requests that the order on this Motion become effective

immediately upon its entry, notwithstanding any stay under Bankruptcy Rule 6004(h) and

6006(d).

## POINTS AND AUTHORITIES

### Section 363(b)

27.    Pursuant to Section 363(b)(1) of the Bankruptcy Code, a debtor in

possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  In determining whether to permit a debtor to sell property of

the estate outside the ordinary course of business, pursuant to Section 363(b)(1), courts must

determine whether the proposed sale has a valid business justification.  *In re 240 North Brand*

*Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (citing *In re Lionel Corp.*, 722 F.2d

1063, 1070 (2nd Cir. 1983)); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997).

28.    Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.  *See, e.g.*, *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

29.    Here, Debtor has a substantial business justification for selling the Property outside the ordinary course of business before a plan of reorganization is confirmed. The Property is no longer operating and therefore does not generate positive cash flow, so it diminishes Debtor's estate with each day that passes.  As discussed above, Debtor has provided adequate and reasonable notice consistent with the Procedures Order to all Notice Parties of the opportunity to bid on the Property and object to the sale.  The Procedures Order and this motion will provide for an open and competitive bidding process for the Property.  Finally, Debtor is proceeding in good faith and will make a showing at the hearing, if necessary, that the Purchaser has acted in good faith.  Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3rd Cir. 1986). The sale of the Property pursuant to the procedures proposed herein should therefore be approved.

PAGE 9 -    DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING
DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND
COMPENSATION OF BROKER (Riverdale Estates)

## Section 363(f)

30.     Additionally, pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate"—with or without the consent of the lienholder—if any one of five enumerated conditions in Section 363(f) is satisfied.  Specifically, a debtor is permitted to sell property free and clear of any interest in the property if: (i) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (ii) the other entity consents; (iii) the interest is a lien and the sale price is greater than the aggregate value of all liens on such property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

31.     One or more of the requirements of Section 363(f) are satisfied by this sale.

## Waiver of Stay

32.     Debtor requests that the order approving the sale become effective immediately upon its entry.  Fed. R. Bankr. P. 6004(h) provides that an "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period.  However, Debtor believes that, given the urgency of the sale, and the fact that Debtor

has given reasonable notice in compliance with the Procedures Order, good cause exists for the Court to waive the 14-day stay period under Bankruptcy Rule 6004(h) and 6006(d).

WHEREFORE, Debtor requests that the Court enter an order in a form substantially similar to attached Exhibit A: (a) approving the Sale Agreement and the transactions contemplated therein; (b) authorizing the sale of the Property free and clear of all liens, claims, encumbrances and interests; (c) authorizing the disbursement of the sale proceeds; (d) authorizing Debtor to employ Broker and pay Broker the Commission; and (e) granting related relief.

DATED: June 21, 2010.

TONKON TORP LLP


By _/s/ Timothy J. Conway_____
    Albert N. Kennedy, OSB No. 821429
    Direct Dial:    (503) 802-2013
    Timothy J. Conway, OSB No. 851752
    Direct Dial:    (503) 802-2027
    Attorneys for Debtor

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **DEBTOR'S MOTION FOR ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND COMPENSATION OF BROKER (Riverdale Estates)** was served on all "ECF" participants through the Court's Case Management/Electronic Case File system on the date set forth below.

In addition, I served the foregoing on the parties indicated as "Non-ECF" on the attached List of interested Parties by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to each party's last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

DATED:  June 21, 2010.

TONKON TORP LLP

By  */s/ Timothy J. Conway*
      Albert N. Kennedy, OSB No. 821429
      Direct Dial:    (503) 802-2013
      Timothy J. Conway, OSB No. 851752
      Direct Dial:    (503) 802-2027
      Attorneys for Debtor

034618/00002/2278994v3

PAGE 1 - CERTIFICATE OF SERVICE

## *In re: Stayton SW Assisted Living, L.L.C.*
### USDC Case No. 09-cv-6082-HO

## NON-ECF PARTICIPANTS:

**Buyer and Counsel**:

Bobby Westbrooks
C/O George Rich, attorney
5384 Popular
Memphis, TN 38119

**Seller**:

Riverdale Senior Living, LLC
Attn: J. Wallace Gutzler, Reg Agent
3723 Fairview Industrial Dr. Ste 270
Salem, OR 97302

James P. Estes, III
PO Box 2309
Salem, OR 97308

Douglas Sproul
6935 Battle Creek Road SE
Salem, OR 97317

Curtis Brody
403 Bavarian Way SE
Salem, OR 97317

Huyen Van Dinh
18130 132nd Place SE
Renton, WA 98058

Thomas J. Wettlaufer
2235 Country Drive S
Salem, OR 97302

Byron Grant
595 Winding Way SE
Salem, OR 97302

Deana Altman Nelson
17439 SW Sapphire Lane
Beaverton, OR 97007

Michael Joe Stephenson
23883 Augusta Drive
Corona, CA 92883

Michael J. Deines
764 Sahalee Dr. S
Salem, OR 97306

**Lienholders:**

Regina Morrison Newman
Shelby County Trustee
PO Box 2751
Memphis, TN 38101-2751

City of Memphis, Treasurer
PO Box 185
Memphis, TN 38101-0185

US Department of HUD
Attn: Tim R. Coon
1670 Broadway, 22nd Floor
Denver, CO 80202

US Department of Housing and Urban
Development
Attn: John M. Hartung
1222 Spruce Street, Room 3.203
St. Louis, MO 63103-2836

**Other Interested Parties**

AFJ Development, LLC
Attn: Michelle R. Fifer
C/O Mike Pardoll
Marcus & Millichap
405 Eagle Bend Drive
Waxhaw, NC 28173

LIST OF INTERESTED PARTIES (Riverdale) (as of 6/21/2010)                    1

# EXHIBIT A

**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial:  (503) 802-2013
    Facsimile:   (503) 972-3713
    E-Mail:       al.kennedy@tonkon.com
**Timothy J. Conway**, OSB No. 851752
    Direct Dial:  (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:       tim.conway@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

      Attorneys for Debtor

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | **USDC Case No. 09-cv-6082-HO** |
| **STAYTON SW ASSISTED LIVING, L.L.C.,** (the Consolidated Sunwest Related Entities), | Bankruptcy Court Case No. 08-36637-tmb11 (Reference Withdrawn) |
| Debtor. | **ORDER APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING COMPENSATION OF BROKER (Riverdale Estates)** |

      THIS MATTER came before the Court on *Debtor's Motion for Order Authorizing the Sale of Property Free and Clear of Liens, Claims, Encumbrances, and Interests; Approving Disbursement of Sale Proceeds; and Authorizing Employment and Compensation of Broker (Riverdale Estates)* (the "Motion").  The Court having reviewed the Motion and finding that

good cause exists therefor, and the Court otherwise being fully advised; NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:

        A.     This Court has jurisdiction to hear and determine the Motion pursuant to 11 U.S.C. §§ 105(a) and 365, and 28 U.S.C. § 157(d) and 1334.

        B.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        C.     Proper, timely, adequate, and sufficient notice of the Motion, the sale hearing, and objection procedures have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Court's earlier *Order Limiting Notice and Approving Form And Manner of Notice and Objection Procedures for Motions to Sell Certain Properties Free and Clear of Liens, Claims, Encumbrances, and Interests* ("Procedures Order"), and no other or further notice is required.

        D.     The transactions contemplated by the Motion, the purchase and sale agreement attached thereto[, as modified by the overbid terms and conditions agreed upon at the Auction, including a purchase price of $_____] ("Sale Agreement"), and related documentation have been negotiated at arms-length, in good faith and are in the best interests of Debtor's estate, its creditors, and the residents of Debtor's facilities.  Debtor has demonstrated that it is an exercise of sound business judgment to enter into the transactions contemplated by the Sale Agreement and related documentation, and have appropriately exercised their fiduciary duties in maximizing the sale price for the property described in the Sale Agreement ("Property").

        E.     [In addition to Bobby Westbrooks' initial offer to purchase the Property, as reflected in the Sale Agreement, Debtor also received a bid[s] for the purchase of the Property from _____.  Accordingly, there were __ Qualified Bidders for the Property, and

the Court held an Auction on July 13, 2010 to determine the winning bidder. _____

("Buyer") submitted the highest and best qualified bid at the Auction conducted by Debtor

between the Qualified Bidders as determined by the Court.]

        F.      Bobby Westbrooks, an individual ("Buyer") has acted in good faith and is

therefore a purchaser in good faith of the Property entitled to the protections of Bankruptcy Code

Section 363(m), and no evidence has been presented that would support avoidance of the

transaction pursuant to Bankruptcy Code Section 363(n).

        G.      The bidding procedures, notice thereof, and Debtor's compliance therewith

have afforded a full, fair, and reasonable opportunity for any entity to make a higher or better

offer to purchase the Property.

        H.      The consideration being paid by Buyer is fair and adequate consideration

for the Property and represents the highest and best offer and will achieve the highest and best

value to Debtor and its estate and creditors, and it will best provide for the interests of the

residents of the facilities.

        I.      A reasonable opportunity to object or to be heard regarding the relief

requested in the Motion has been afforded to all interested persons and entities.

        J.      Approval of the Sale Agreement and related documentation is in the best

interests of Debtor and its estates and creditors.

        K.      Buyer is not an insider, as that term is defined in the Bankruptcy Code, of

Debtor.  Furthermore, no insiders of Debtor are receiving or retaining any benefit, property or

payments in connection with the sale of the Property or other transactions contemplated by the

Sale Agreement and related documentation except to the extent such insiders have allowed

PAGE 3 -   ORDER APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
           ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS;
           AND AUTHORIZING EMPLOYMENT AND COMPENSATION OF BROKER (Riverdale Estates)

claims against or equity interests in Debtor and, as a result, may participate in a distribution of sale proceeds.

L.    Buyer, and its affiliates, successors, and assigns, are not, as a result of the transactions contemplated hereby or by consummating such transactions, successors to Debtor generally because, among other things: (i) other than as explicitly set forth in the Sale Agreement, Buyer is not expressly or impliedly agreeing to assume any of Debtor's debts; (ii) the transactions contemplated by the Sale Agreement do not amount to a consolidation, merger or de facto merger of Debtor with Buyer or any affiliates, successors, or assigns of Buyer; (iii) Buyer and its affiliates, successors, and assigns are not merely a continuation or extension of Debtor or any enterprise or product line of Debtor; and (iv) the transactions are not being entered into fraudulently or in order to escape liability from Debtor's debts.

M.    Sale of the Property is permitted pursuant to one or more provisions of Section 363(f)(1)–(5) of the Bankruptcy Code.  Those non-debtor parties with liens, claims, encumbrances and interests of any kind or nature whatsoever in the Property, including without limitation, any tenant-in-common, co-owners, or other investors related to the Property who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED;

2.    The Sale Agreement attached to the Motion is hereby approved and incorporated herein by this reference.

3.    Debtor is authorized to pay Marcus & Millichap Real Estate Services Corporation, Inc. ("Broker") a commission of 3.0% of the purchase price or $50,000, which ever

is greater ("Commission") upon the closing of the sale of the Property to Buyer, pursuant to the terms of the Listing Agreement that was attached to the Motion.

4.  [Buyer is the only Qualified Bidder for the Property, and therefore no auction for the Property is necessary.] or [Buyer was the winning bidder for the Property at the Auction held by the Court on July 13, 2010.  Accordingly, Debtor is authorized to sell the Property to Buyer.]

5.  [_____'s ("Back-up Bidder") bid in the sum of $_____ is approved as the second highest or otherwise second best qualified bid (the "Back-up Bid").  The Back-up Bid shall remain open and irrevocable through the consummation and Closing of the sale with Buyer.  Debtor shall retain Back-up Bidder's Escrow Deposit until the sale of the Property to Buyer closes or no later than 30 days after entry of this Order.]

6.  The Closing Date for the sale of the Property shall be no later than 15 days after entry of this Order.  [If the sale of the Property to Buyer does not Close within 15 days after entry of this Order, or as soon thereafter as the title company is willing to Close the sale, then Buyer's Earnest Deposit will be immediately forfeited, and Debtor is authorized to notify the Back-up Bidder that Debtor intends to proceed to sell the Property to the Back-up Bidder pursuant to the Back-up Bid.  Closing with the Back-up Bidder shall occur within 10 days thereafter.]

7.  [Pursuant to Section 9(b) of the Sale Agreement, upon closing of the sale of the Property to Buyer and upon receipt of documentation supporting Bobby Westbrooks' out of pocket expenses related to this transaction, Debtor shall reimburse Bobby Westbrooks his out of pocket expenses in an amount not to exceed $25,000.]

8.      All objections to the Motion or the relief requested therein that were not withdrawn, if any, are overruled and rejected in their entirety.

9.      Buyer is a good faith purchaser entitled to the protections afforded a purchaser pursuant to section 363(m) of the Bankruptcy Code.  The sale of the Property to Buyer under the Sale Agreement will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of every state, territory, and possession of the United States and the District of Columbia.

10.     Clyde Hamstreet, as Chief Restructuring Officer ("CRO"), on behalf of Debtor and Riverdale Senior Living, LLC, an Oregon limited liability company is authorized and directed to execute, deliver, fully perform under, consummate, and implement the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the transactions contemplated by the Sale Agreement.

11.     Pursuant to Sections 105(a) and 363(b) and (f) of the Bankruptcy Code, on and as of the Closing Date, and except as expressly provided in the Sale Agreement, Buyer (or its assignee) shall acquire all of Debtor's, Riverdale Senior Living, LLC's, the bankruptcy estate's, and all other co-owners of the Property's right, title and interest in and to the Property, free and clear of: (a) all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, restrictions, constructive or resulting trusts, rights of first refusal, or charges of any kind or  nature, if any, including, but not limited to, any restrictions on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (collectively, "Interests"); and (b) all debts, claims (as that term is defined in the Bankruptcy Code), obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, and whether imposed by

agreement, understanding, law, equity, or otherwise, arising in any way in connection with any

acts, or failure to act, of Debtor, including, without limitation, any claims or liabilities arising out

of or in connection with any employee benefit plan or any warranty or tort claims (collectively,

"Claims"), whether arising before or after the commencement of the above-captioned Chapter 11

cases, with all such Interests and Claims released, terminated, and discharged as to the Property.

All such Interests and Claims, if any, shall attach to the proceeds of sale of the Property paid to

Debtor by Buyer to the same extent and with the same priority, validity, force, and effect as such

Interests and Claims had against the Property immediately prior to the Closing, except: (i) that

such Interests and Claims shall not so attach to the proceeds paid to Debtor by Buyer if and to

the extent otherwise agreed by the holder of any such Interests and Claims, (ii) as necessary to

effect the terms of the Sale Agreement, (iii) subject to any rights, claims, and defenses Debtor

may possess as to such holder, and (iv) as may otherwise be provided in the Distribution Plan

approved by the Court in *SEC v. Sunwest Management, Inc., et al.*, U.S. District Court Case

No. 09-cv-6056-HO ("Distribution Plan").

        12.    Neither the purchase of the Property by Buyer, nor the subsequent use by

Buyer of any of the Property previously operated by Debtor, will cause Buyer to be deemed

successor in any respect to Debtor's business within the meaning of any federal, state or local

revenue, pension, ERISA, tax, labor, or environmental law, rule, or regulation (including,

without limitation, filing requirements under any such laws, rules, or regulations) or under any

products liability law or doctrine with respect to Debtor's liability under such law, rules,

regulations, or doctrines.  Buyer will have no liability or obligation under the WARN Act (29

U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and

Liability Act, or any other federal, state, or local environmental law by virtue of Buyer's

consummation of the transactions contemplated by the Sale Agreement.

13.     On the Closing, each of Debtor's creditors and holders of Interests or

Claims is authorized and directed to execute such documents and take all other actions as may be

necessary to release its Interests in or Claims against the Property, if any, as such Interests or

Claims may have been recorded or may otherwise exist.  If any person or entity that has filed

financing statements or other documents or agreements evidencing interests in or claims against

the Property shall not have delivered to Debtor prior to the Closing, in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfaction and

releases of all Interests or Claims which the person or entity has with respect to the Property,

(a) Debtor is hereby authorized to execute and file such statements, instruments, releases, and

other documents on behalf of the person or entity with respect to the Property, and (b) Buyer is

hereby authorized to file, register, or otherwise record a certified copy of this Order, which once

filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all

Interests or Claims of any kind or nature whatsoever in or against the Property.  The foregoing

notwithstanding, the provision of this Order authorizing the sale of the Property free and clear of

liens, claims, encumbrances, and interests shall be self-executing, and notwithstanding the failure

of Debtor, Buyer, or any other party to execute, file, or obtain releases, termination statements,

assignments, consents, or other instruments to effectuate, consummate, and/or implement the

provisions hereof or in the Sale Agreement with respect to the sale of the Property, all interests in

or Claims against the Property shall be deemed unconditionally released, discharged, and

divested.  This Order is and shall be binding upon and govern the acts of all entities including,

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

PAGE 8 -    ORDER APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
            ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS;
            AND AUTHORIZING EMPLOYMENT AND COMPENSATION OF BROKER (Riverdale Estates)

mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

14.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreement.

15.    At Closing, Debtor is authorized and directed to distribute the proceeds from the sale as proposed in the Sale Motion.  Any previous co-owner in the Property shall receive, in exchange for its property interest, distribution rights as determined by the Distribution Plan.  The automatic stay is hereby modified as necessary to permit the disbursements from escrow at Closing set forth above.

16.    Except as expressly provided in the Sale Agreement, Buyer is not assuming nor shall it in any way whatsoever be liable or responsible, as successor or otherwise, for any claims, liabilities, debts, or obligations of Debtor or its estate of any kind or character in any way whatsoever relating to or arising from the Property or Debtor's operations or use of the Property prior to the Closing, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, under the laws of the United States, any state, territory, or possession of the United States or the District of Columbia or any other country or foreign jurisdiction.

17.    From and after entry of this Order, neither Debtor, its estate, any creditor, director, officer, employee or shareholder of Debtor, nor any other person or entity shall take or cause to be taken any action that would interfere with the transfer of the Property to Buyer in accordance with the terms of this Order and the Sale Agreement.

18.    After the Closing, no person or entity, including, without limitation, any federal, state, or local governmental agency, department, or instrumentality, shall assert by suit or otherwise against Buyer or its successors in interest any Interests or Claims that such person or entity had, have, or may have against Debtor or the estates or any liability, debt, or obligation relating to or arising from the Property, or the use of the Property before or as of the Closing, and all persons and entities are hereby enjoined from asserting, prosecuting, or otherwise asserting against Buyer in any way whatsoever any such Claims or Interests, except insofar as such Claims or Interests have been expressly assumed by Buyer in writing pursuant to the Sale Agreement.

19.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein.

20.    This Court shall retain jurisdiction to (a) interpret, enforce and implement the terms and provisions of the Sale Agreement, all exhibits and amendments thereto, and any releases, waivers, and consents thereunder, and any agreements, transaction documents, or other instruments executed in connection therewith, (b) resolve any disputes arising under or related to the Sale Agreement and the closing requirements, except as otherwise provided therein, (c) compel delivery of the Property to Buyer, and (d) interpret, implement, and enforce the provisions of this Order.

21.    The provisions of the Sale Agreement and this Order, any actions taken pursuant thereto, and authorization for all payments made hereunder shall survive entry of any

order which may be entered confirming any plan of reorganization or liquidation for Debtor, converting Debtor's case from chapter 11 to chapter 7 of the Bankruptcy Code, or dismissing Debtor's case.  Nothing contained in any such plan or order shall conflict with, or derogate from, the provisions of the Sale Agreement or this Order (as applicable).

22.     The Sale Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement is not material.

23.     The failure to specifically include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

24.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), and 7062, this Order shall be effective and enforceable immediately upon entry.

25.     This Order shall bind Riverdale Senior Living, LLC, Debtor, its estate, its creditors and interest holders, all of their respective officers, directors, and employees, all claimed co-owners of the Property, any official or unofficial committee that has been or may be

* * *

* * *

* * *

* * *

* * *

* * *

PAGE 11 -  ORDER APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; APPROVING DISBURSEMENT OF SALE PROCEEDS; AND AUTHORIZING EMPLOYMENT AND COMPENSATION OF BROKER (Riverdale Estates)

appointed in these cases, and any successor, trustee, or other responsible person, including any

trustee appointed under Chapter 7 of the Bankruptcy Code.

DATED this _____ day of July, 2010.


_____
Michael R. Hogan, U.S. District Court Judge

Presented by:

TONKON TORP LLP

By _____
     Albert N. Kennedy, OSB No. 821429
     Timothy J. Conway, OSB No. 851752
     Attorneys for Debtor


034618/00002/2278381v1

# EXHIBIT B

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") shall be effective as of **June 21, 2010** (the "**Effective Date**"), by and between STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company ("**Seller**") and Bobby Westbrooks ("**Purchaser**"). (Seller and Purchaser are hereinafter referred to collectively as "**Parties**" and individually as "**Party**.")

## RECITALS

A.    Seller is the owner of certain real property more particularly described on **Exhibit 1** attached hereto and incorporated by reference (collectively, the "**Land**") and improvements and assets located on the Land (collectively, the "**Facility**"), which includes a formerly operating 89 unit memory care/assisted living facility known as Riverdale Estates located at 6880 East Raines Road in Memphis, Tennessee.

B.    Seller wishes to sell to Purchaser (i) the Land; (ii) the Facility and related improvements, and (iii) the personal property owned by Seller related to and located at the Facility, all at the price and on the other terms and conditions specified below and Purchaser wishes to so purchase and acquire such assets.

## AGREEMENT

The Recitals set forth above are hereby incorporated herein by this reference. Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Seller and Purchaser agree as follows:

1.    <u>Purchase</u>.  Seller agrees to sell to Purchaser, or cause to be sold to Purchaser, on the Closing Date (as defined below), and Purchaser agrees to purchase on the Closing Date, in accordance with the terms of this Agreement, all of Seller's right, title and interest in and to:

(a)    the Land and all easements, and beneficial interests appurtenant to the Land;

(b)    the existing buildings, fixtures, structures and other improvements located upon the Land, together with apparatus, equipment and appliances incorporated therein and used in connection with the operation or occupancy thereof (the "**Improvements**");

(c)    all tangible personal property located within and/or used exclusively in connection with the operation of the Improvements, including all moveable trade fixtures, to the extent of Seller's interests therein (the "**Personal Property**");

The Land and the Improvements are collectively referred to herein as the "**Real Property**". The Real Property and Personal Property are referred to herein collectively as the "**Property**." Notwithstanding any other provision of this Agreement, the Property will not include the Excluded Assets (as defined below).

2

2.     <u>Excluded Assets</u>.  Notwithstanding anything to the contrary set forth in this Agreement, Seller is not transferring to Purchaser any of, and Purchaser shall acquire no right, title or interest in or to the following assets of the Seller (the "**Excluded Assets**"):

(a)     all cash and cash equivalents;

(b)     all proprietary books, records, files, and papers (whether in hard copy or computer format) that are not used in, and that do not relate to or affect, the Property, including sales and promotional literature, and operating and procedures manuals;

(c)     any governmental authorization that relates to or affects the Facility but which is not assignable or transferable and does not run with the land without the need for assignment;

(d)     all personnel and employment records that relate to former or current Facility Employees (as defined below); and

(e)     all refundable utility or other vendor deposits, except as provided herein.

3.     <u>Opening of Escrow; Deposit</u>.

(a)     Upon full execution, this Agreement shall constitute a binding agreement between the Parties.  This Agreement shall also constitute escrow instructions to Escrow Agent (as defined below).  Promptly upon full execution of this Agreement by Purchaser, Seller and _____ in _____ ("**Escrow Agent**"), and escrow (the "**Escrow**") shall be deemed open with Escrow Agent, which Escrow shall be governed by the terms of this Agreement.

(b)     As security for Purchaser's obligations under this Agreement, Purchaser shall execute a promissory note to Seller equal to $45,000.00 and delivered to escrow, which Purchaser shall replace within three (3) business days after the Purchaser receives notice of the opening of Escrow, with deposit into Escrow Forty-Five Thousand dollars ($45,000.00) in immediately available funds as an earnest money deposit (the "**Deposit**") for prompt return of promissory note.  Escrow Agent shall deposit the Deposit into an interest-bearing account and the Deposit shall be applied towards the Purchase Price (as defined below) at the Closing.  The Deposit will be non-refundable to Purchaser except as specifically provided in this Agreement.

4.     <u>Purchase Price</u>.  At the Closing, Purchaser shall pay through Escrow to Seller an aggregate purchase price of Four Hundred Fifty Thousand and no/100 dollars ($450,000.00) for the Property (the "**Purchase Price**"), as adjusted pursuant to the terms of this Agreement, and inclusive of the Deposit.  The Purchase Price shall be payable in immediately available funds, inclusive of the Deposit, at Closing.

5.     <u>Title Report and Survey</u>.  Purchaser shall obtain a preliminary title report regarding the Real Property and all recorded documentation referenced therein (the "Title Report"), which shall include a plat map with all easements plotted.  Twenty (20) days from the Effective Date, Purchaser shall notify Seller in writing of Buyer's disapproval of any exceptions shown in the Title Commitment and Exception Documents (the "Title Objection Letter"). Within five (5) days after Seller's receipt of the Title Objection Letter, Seller shall specify by written notice delivered to Purchaser which of the title defects to which Buyer has objected in accordance with the terms hereof Seller will correct at or prior to Closing and which of such title defects Seller refuses to correct at or prior to Closing.  If Seller fails to deliver any such notice

4

within said five (5) day period, Seller shall be deemed to have agreed to correct any of the title defects to which Purchaser has objected.  If Seller refuses to correct some or all of the title defects objected to by Purchaser, Purchaser shall have five (5) days to advise Seller of its decision to close, notwithstanding the title defects, or of its election to terminate this Agreement. In the event Purchaser elects to terminate this Agreement as a result of the existence of title defects which Seller refuses to correct by Closing, neither party shall have any further rights or obligations hereunder.  At Closing, Seller shall deliver title to the Real Property free and clear except for the "Permitted Exceptions" set forth in the Title Report.  The term "**Permitted Exceptions**" shall mean: the specific exceptions (excluding exceptions that are part of the promulgated title insurance form) in the Title Report that the title company has not agreed to remove from the title commitment; matters created by, through or under Purchaser; and real estate taxes not yet due and payable.  In the event Purchaser receives notice from the Title Company of any new title exceptions first arising after the date of the Purchaser's Title Notice (the "New Title Exceptions"), then the procedure set forth in this Section 5 shall be followed by the parties with respect to such New Title Exceptions.  Purchaser may obtain a survey of the Property at its own expense.

6.      <u>Deed, Bill of Sale and Assignments</u>.  Title to the Real Property will be conveyed by a special warranty deed (the "**Deed**").  Title to the Personal Property will be conveyed by Bill of Sale substantially in the form attached hereto as **<u>Exhibit 2</u>** (the "**Bill of Sale**").  As used herein the Deed and the Bill of Sale are referred to collectively as the "**Conveyance Documents**", and will be executed by the Seller.

7.      <u>Seller's Representations and Warranties</u>.  Seller, to the best of its actual knowledge, makes the following representations and warranties to Purchaser:

(a)    <u>Organization, Standing and Power</u>.  Seller is duly organized and validly existing under the laws of the State of Oregon and fully authorized to transact business and to own and convey property and has full power and right to enter into and perform this Agreement, and the execution and delivery of this Agreement, and the consummation of the transactions contemplated herein by Seller, have been duly authorized.

(b)    <u>Authorization of Seller</u>.  This Agreement is, and all documents which are to be executed by Seller and delivered to Purchaser on the Closing Date are, and on the Closing Date will be duly authorized, executed and delivered by Seller, and are, and on the Closing Date will be legal, valid and binding obligations of Seller.   The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller, except as provided for by this Agreement, including but not limited to Section 9(b), do not and will not: (i) violate any statute, law, rule or regulation, or any judgment, order, writ, injunction or decree of any court or governmental authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound.

8.    <u>Purchaser's Representations and Warranties</u>.  Purchaser makes the following representations and warranties to Seller:

(a)    Organization, Standing and Power.  Purchaser is an individual, but may assign to an entity that shall be duly organized, validly existing and in good standing under the laws of the State of Tennessee.  Purchaser has all requisite entity power and authority to own,

6

lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings related hereto.

(b)    Authorization of Purchaser.  The execution, delivery and performance of this Agreement by Purchaser have been duly and validly authorized.  The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Purchaser do not and will not:  (i) conflict with or result in a breach of the articles of incorporation or by-laws of Purchaser; (ii) violate any statute, law, rule or regulation or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Purchaser is a party or by which Purchaser or its assets or properties may be bound.

(c)    Funds.  Purchaser has sufficient capacity and relationships with lenders and/or equity investors to enable it to purchase or finance the purchase of the Property and apply for all necessary licenses related thereto.  Purchaser is a sophisticated real estate investor and has the experience, knowledge and ability to evaluate the purchase of the Property and the operation of the Facility.  In no event shall the receipt or availability of any funds or financing by Purchaser or any of its affiliates or any other financing or other similar transactions be a condition to any of Purchaser's obligations hereunder.

9.    Closing.

(a)    Date of Closing.  The close of escrow with respect to the transactions contemplated by this agreement (the "**Closing**") will occur in the offices of Escrow Agent either

in person or via delivery of original documents on a day that is on or before fifteen (15) days from the execution of the Court Order (the "**Closing Date**").

       (b)    <u>Condition to Closing</u>.  The Seller is subject to the jurisdiction of the United States District Court for the District of Oregon (the "**Court**") in the case of *Securities and Exchange Commission v. Sunwest Management, Inc. et al*, Case No. 09-6056, and the bankruptcy case entitled *In re Stayton SW Assisted Living, LLC, et al;* Case No. 09-6082-HO. Both matters are being handled by the Court.   The consummation of the transaction contemplated herein is conditioned on the entry of an order by the Court approving the consummation of the transaction and the closing thereof.  Seller shall use reasonable efforts to obtain Court approval of the transaction.  If the Court does not enter an order approving the consummation of the transaction on or before thirty (30) days after the Effective Date, Seller or Purchaser may terminate this Agreement in accordance with this section by giving written notice of termination to Purchaser.  In the event of such termination in accordance with this section, the Deposit shall be returned to Purchaser, whereupon neither party hereto shall have any further liability or obligation to the other hereunder, except as otherwise herein provided.  Prior to entry of any order approving the consummation of the transaction contemplated by this Agreement, the sale of the facility will be to a higher and better offer in accordance with the procedures set forth in the motion to approve this transaction.  If the Court approves a sale to a third party purchaser while this Agreement is effective the Seller will return the Deposit to  Purchaser and Seller will seek to obtain reimbursement of Purchaser's third party out-of-pocket costs not to exceed $25,000.00.

       (c)    <u>Closing Deliveries</u>.  At the Closing, Seller will deposit with Escrow Agent the following documents executed and acknowledged, as applicable, by Seller: the Deed; the Bill

8

of Sale;  a non-foreign affidavit substantially in the form attached hereto as **Exhibit 3**; a settlement statement; and such other items as the Title Company may reasonably require or may be reasonably requested in order for Seller to comply with the terms of this Agreement.  At the Closing, Purchaser shall deposit with Escrow Agent the adjusted Purchase Price (less the Deposit); all escrow fees, real estate transfer taxes as required by statute or local ordinance relating to the transfer of the Property from the Seller to Purchaser, charges allocable to Purchaser's financing for this transaction, the recording fee on the Deed, all personal property taxes relating to the Property and its share of prorated items; and such other items as may be reasonably requested in order for Purchaser to comply with the terms of this Agreement. Purchaser shall also be responsible for any premiums, costs or charges for title insurance, extended title coverage, endorsements, lender's coverage, and all other similar amounts.  Seller shall pay its share of prorated items.  Each Party shall pay its own attorneys' fees.

10.    "AS-IS" SALE; LIMITATION; DISCLAIMER NOTICE.    PURCHASER ACKNOWLEDGES THAT NOTWITHSTANDING ANY PRIOR OR CONTEMPORANEOUS ORAL OR WRITTEN REPRESENTATIONS, STATEMENTS, DOCUMENTS OR UNDERSTANDINGS, AND THIS AGREEMENT CONSTITUTES THE ENTIRE UNDERSTANDING OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ANY SUCH PRIOR OR CONTEMPORANEOUS ORAL OR WRITTEN REPRESENTATIONS, STATEMENTS, DOCUMENTS OR UNDERSTANDINGS. PURCHASER FURTHER ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT, (I) NEITHER SELLER, NOR ANY PRINCIPAL, AGENT, ATTORNEY, EMPLOYEE, BROKER OR OTHER REPRESENTATIVE OF SELLER HAS MADE ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND

9

WHATSOEVER, EITHER EXPRESS OR IMPLIED, REGARDING THE PROPERTY (INCLUDING INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PROPERTY, THE PHYSICAL CONDITION OF ANY PERSONAL PROPERTY COMPRISING A PART OF THE PROPERTY OR WHICH IS THE SUBJECT OF ANY LEASE OR CONTRACT TO BE ASSUMED BY PURCHASER AT THE CLOSING, THE ENVIRONMENTAL CONDITION OR OTHER MATTER RELATING TO THE PHYSICAL CONDITION OF ANY REAL PROPERTY OR IMPROVEMENTS WHICH ARE THE SUBJECT OF ANY REAL PROPERTY LEASE TO BE ASSUMED BY PURCHASER AT THE CLOSING OR ANY OTHER REAL PROPERTY OR IMPROVEMENTS COMPRISING A PART OF THE PROPERTY, THE ZONING OF ANY SUCH REAL PROPERTY OR IMPROVEMENTS, THE VALUE OF THE PROPERTY (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF THE PROPERTY, THE TERMS, AMOUNT, VALIDITY, COLLECTIBILITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES OR REAL PROPERTY LEASE OR CONTRACT, THE TITLE OF THE PROPERTY (OR ANY PORTION THEREOF), OR ANY OTHER MATTER OR THING RELATING TO THE PROPERTY OR ANY PORTION THEREOF), AND (II) THAT PURCHASER IS NOT RELYING ON ANY WARRANTY, REPRESENTATION OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY AND AGREES THAT PURCHASER IS ACQUIRING THE PROPERTY IN WHOLLY AN "AS-IS," "WHERE-IS" CONDITION WITH ALL FAULTS AND WAIVES ALL CONTRARY RIGHTS AND REMEDIES AVAILABLE TO IT UNDER STATE AND FEDERAL LAW.  EXCEPT AS AFORESAID, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE USE AND CONDITION OF THE PROPERTY, INCLUDING THE

CONDITION OF THE SOILS OR GROUNDWATERS OF THE PROPERTY AND THE PRESENCE OR ABSENCE OF HAZARDOUS MATERIALS ON OR UNDER THE PROPERTY OR ITS COMPLIANCE WITH APPLICABLE STATUTES, LAWS, CODES, ORDINANCES, REGULATIONS OR REQUIREMENTS RELATING TO LEASING, ZONING, SUBDIVISION, PLANNING, BUILDING, FIRE, SAFETY, HEALTH OR ENVIRONMENTAL MATTERS OR ITS COMPLIANCE WITH COVENANTS, CONDITIONS AND RESTRICTIONS (WHETHER OR NOT OF RECORD) OR OTHER LOCAL, MUNICIPAL, REGIONAL, STATE OR FEDERAL REQUIREMENTS, OR OTHER STATUTES, LAWS, CODES, ORDINANCES, REGULATIONS OR REQUIREMENTS. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY (EXPRESS OR IMPLIED) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL PORTIONS OF THE PROPERTY AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PROPERTY AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE PROPERTY, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.

     11.   <u>Remedies</u>.

     (a)   If any warranty or representation of Purchaser made herein (as may have been modified by any facts and circumstances that change between the Effective Date and the Closing Date) shall prove untrue in any material respect or if Purchaser defaults and fails to

complete the purchase of the Property on or prior to the date for performance provided herein, then Seller may give Purchaser two (2) business days notice thereof and opportunity to cure and if Purchaser does not cure within said period then Seller's sole and exclusive remedy shall be to elect to terminate this Agreement by giving notice of such termination to Purchaser and Escrow Agent, whereupon this Agreement will be terminated, Escrow Agent shall pay the Deposit, together with all accrued interest thereon, to Seller, and neither Party shall have any further rights or obligations under this Agreement except as expressly provided herein. Purchaser and Seller agree that it would be impractical and extremely difficult to estimate the damages that Seller may suffer. Therefore, Purchaser and Seller agree that a reasonable estimate of the total net detriment that Seller would suffer in the event that Purchaser defaults and fails to complete the purchase of the Property is, and Seller's sole and exclusive remedy (whether at law or in equity) shall be, an amount equal to the Deposit, together with all accrued interest thereon. This amount will be the full, agreed and liquidated damages for any breach of this Agreement by Purchaser. The payment of this amount as liquidated damages is not intended as a forfeiture or penalty, but is intended to constitute liquidated damages to Seller.

(b)    If any warranty or representation of Seller made herein shall prove untrue in any material respect or if any Seller shall fail to perform any of its obligations under this Agreement on or prior to the date for performance provided herein or therein, then Purchaser may give such Seller two (2) business days notice thereof and opportunity to cure and if Seller does not cure within said period then Purchaser's sole and exclusive remedy under this Agreement shall be to elect to terminate this Agreement by giving Seller and Escrow Agent written notice thereof whereupon this Agreement will be terminated, the Escrow Agent shall deliver to Purchaser the Deposit, together with all accrued interest thereon, and neither Party

shall have any further rights or obligations under this Agreement.  Purchaser and Seller agree that it would be impractical and extremely difficult to estimate the damages that Purchaser may suffer.  Therefore, Purchaser and Seller agree that a reasonable estimate of the total net detriment that Purchaser would suffer in the event that Seller defaults and fails to complete the purchase of the Property is and Purchaser's sole and exclusive remedy (whether at law or in equity) shall be, an amount equal to the return of the Deposit, together with all accrued interest thereon.  This amount will be the full, agreed and liquidated damages for any breach of this agreement by Seller.  The payment of this amount as liquidated damages is not intended as a forfeiture or penalty, but is intended to constitute liquidated damages to Purchaser.

12.    <u>Casualty; Condemnation</u>.  If (i) there is any loss, damage or destruction to the Property by fire or other casualty (a "**Casualty Event**") which causes a Casualty Event and the damage is in excess of ten percent (10%) of the Purchase Price or more than 10% of the Real Property relating to any Facility shall be taken or in which the Property taken has a fair market value in excess of ten percent (10%) of the Purchase Price (any of the foregoing shall be referred to herein as the "**Floor**"), then Purchaser will have the right to terminate this Agreement and receive a return of the Deposit, together with all accrued interest thereon, if it so notifies Seller in writing not later than the first to occur of (a) ten (10) days after it is advised of such Casualty Event or condemnation proceeding or (b) the Closing Date.  Seller shall promptly notify Purchaser in writing of a Casualty Event or condemnation affecting the Property, and if the Casualty or condemnation is less than or equal to the Floor, will assign to Purchaser at Closing Seller's rights with respect to all insurance or condemnation proceeds related thereto less any sums expended by Seller with Purchaser's consent to restore such casualty, and Purchaser will receive a credit equal to the deductible plus any uninsured amounts.  If the Casualty Event or

13

condemnation is in excess of the Floor and Purchaser elects not to terminate this Agreement, then Seller will assign to Purchaser at Closing Seller's rights with respect to all insurance or condemnation proceeds related thereto less any sums expended by Seller with Purchaser's consent to restore such casualty, and Purchaser will receive a credit equal to the deductible plus any uninsured amounts.

13.    <u>Notices</u>.    All notices provided for herein may be telecopied (with machine verification of receipt), sent by Federal Express or other overnight courier service or delivered or mailed registered or certified mail, return receipt requested.  If a notice is mailed, it will be considered delivered upon receipt or refusal thereof.  If a notice is sent via telecopy on a business day it will be deemed received upon receipt of verification of transmission.  If a notice sent via overnight courier, it will be deemed received upon the next business day, provided it is then delivered.  The addresses to be used in connection with such correspondence and notices are the following, or such other address as a Party will from time to time direct:

|  |  |
|---|---|
| Seller: | Riverdale Senior Living, LLC<br>Attn.:  James Estes<br>3723 Fairview Industrial Dr, SE<br>Suite 270, PO Box 3006<br>Salem, OR 97302-0006<br>Facsimile No.: (503) 485-1192<br>E-mail:  james.estes@sunwestmanagement.com |
| with copy to: | Seyfarth Shaw LLP<br>Attn.:  Greg R. Yates<br>620 Eighth Avenue<br>New York, New York 10018<br>Facsimile No.:  (917) 344-1278<br>E-mail:  gyates@seyfarth.com |
| Purchaser: | Bobby Westbrooks<br>Phone No.: 901-212-3581<br>Facsimile No.:<br>E-mail: bgwestbrooks@bellsouth.com |

with copy to:          George Rich
                       5384 Poplar
                       Memphis, TN
                       Phone No.: 901-682-5399
                       Facsimile No.:
                       E-mail: georgerichlaw@aol.com

14.    Assignment.  This Agreement will inure to the benefit of and be binding upon the Parties hereto and their heirs, successors and permitted assigns.  Neither Party may assign this Agreement without the prior written consent of the other Party, except that Purchaser may assign to an affiliate with prior written notice to Seller.

15.    Confidentiality.  Purchaser and Seller each covenants that it will maintain the confidentiality of all confidential information which it receives from the other or its agents and all reports, studies and other documentation which it develops based thereon until Closing, except as otherwise required in order to perform its inspections under this Agreement, or by applicable law or court rule or order if this transaction closes, and further covenants that, if this transaction does not close, it will destroy all such documents.  Purchaser's provision of such information to investors, attorneys, lenders, employees and consultants during the term of this Agreement will not be deemed to violate the foregoing covenant so long as the recipients agree to honor the confidentiality requirement.

16.    Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of Oregon (without regard to principles of conflict of laws).

17.    <u>Commissions</u>.  Each Party shall be responsible for all commissions and/or finders fees that it has incurred with regard to this transaction, if any, and shall indemnify and hold the other Party to this Agreement harmless therefrom.  Purchaser has not been represented by a broker under a written agreement between Purchaser and a broker in connection with the sale contemplated by this Agreement.  Seller has been represented by Marcus & Millichap, a broker ("**Seller's Broker**"), in connection with the sale contemplated by this Agreement. Seller shall pay the brokerage commission to Seller's Broker pursuant to the written agreement between Seller and such Seller's Broker and shall indemnify Purchaser against any claim against Purchaser or the Property by Seller's Broker arising therefrom.

18.    <u>Costs and Expenses</u>.  Except as otherwise provided herein, each Party hereto will bear its own costs and expenses in connection with the negotiation, preparation and execution of this Agreement and other documentation related hereto and in the performance of its duties under this Agreement.

19.    <u>Miscellaneous</u>.

(a)    <u>Headings</u>.  The headings in this Agreement are for convenience only and do not in any way limit or affect the terms and provisions of this Agreement.  All references to "paragraphs" shall be to the numbered paragraphs of this Agreement unless specifically stated otherwise.

(b)    <u>Calculation of Time Periods</u>.  Unless otherwise specified, in computing any period of time described in this Agreement, the day of the act or event after which the designated period of time begins to run is not to be included and the last day of the period so computed is to be included, unless such last day is a Saturday, Sunday or legal holiday, in which

16

event it shall end on the next business day.  The final day of any such period will be deemed to end at 5:00 p.m. Pacific Time.

(c)  <u>Time of Essence</u>.  Purchaser and Seller expressly and specifically agree that time is of the essence of this Agreement and all provisions, obligations and conditions thereof.  All time periods set forth herein in terms of *"days"* refer to calendar days.  Whenever notice must be given, documents delivered or an act done under this Agreement on a day that is not a business day, the notice may be given, document delivered or act done on the next following day that is a business day.  As used in this Agreement, *"business day"* shall mean a day other than a Saturday, Sunday or a day observed as a legal holiday.

(d)  <u>Gender</u>.  Wherever appropriate in this Agreement, the singular will be deemed to refer to the plural and the plural to the singular, and pronouns of certain genders will be deemed to include either or both of the other genders.

(e)  <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which will be deemed an original, but which when taken together will constitute one and same instrument.

(f)  <u>Exhibits</u>.  The exhibits and schedules referred to herein and attached to this Agreement are incorporated herein as if set forth in full.

(g)  <u>Construction</u>.  This Agreement is the result of negotiations between the Parties, neither of whom has acted under any duress or compulsion, whether legal, economic or otherwise.  Accordingly, the terms and provisions hereof shall be construed in accordance with their usual and customary meanings.  Seller and Purchaser hereby waive the application of any

17

rule of law which otherwise might be applicable to the construction of this Agreement that ambiguous or conflicting terms or provisions should be construed against the Party who (or whose attorney) prepared the executed Agreement or any earlier draft of the same.  As used in this Agreement, *"sole discretion"* shall mean sole, absolute, unfettered and unreviewable judgment and discretion without regard to whether such judgment or discretion is exercised reasonably or unreasonably.  As used in this Agreement, the term "including" shall mean "including, but not limited to."

(h)     Interpretation. If there is any specific and direct conflict between, or any ambiguity resulting from, the terms and provisions of this Agreement and the terms and provisions of any document, instrument or other agreement executed in connection herewith or in furtherance hereof, including any exhibits hereto, the same shall be consistently interpreted in such manner as to give effect to the general purposes and intention as expressed in this Agreement, which shall be deemed to prevail and control.

(i)     Severability.  If any term or provision of this Agreement shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, but such term or provision shall be reduced or otherwise modified by such court or authority only to the minimum extent necessary to make it valid and enforceable, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  If any term or provision cannot be reduced or modified to make it reasonable and permit its enforcement, it shall be severed from this Agreement and the remaining terms shall be interpreted in such a way as to give maximum validity and enforceability to this Agreement.  It is the intention of the Parties hereto that if any provision of this Agreement is capable of two constructions, one of which would render the

provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

20.    <u>Unenforceability</u>.  If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect the remainder of such provision or any other provisions of this Agreement.

21.    <u>Amendment, Modifications</u>.  This Agreement may not be altered, amended, changed, waived, terminated or modified in any respect or particular unless the same is in writing and signed by both Parties.

22.    <u>Waiver</u>.  A Party may, at any time or times, at its election, waive any of the conditions to its obligations under this Agreement, but any such waiver will be effective only if contained in a writing signed by such Party.  No waiver will reduce the rights and remedies of such Party by reason of any breach of the other Party.  No waiver by any Party of any breach under this Agreement will be deemed a waiver of any other or subsequent breach.

23.    <u>Facsimile or Electronic Scanned Signatures</u>.  Each Party (i) has agreed to permit the use, from time to time and where appropriate, of telecopied or electronically scanned and transmitted signatures in order to expedite the transaction contemplated by this Agreement, (ii) intends to be bound by its respective telecopied or scanned and transmitted signature, (iii) is aware that the other will rely on the telecopied or scanned signature, and (iv) acknowledges such reliance and waives any defenses to the enforcement of the documents effecting the transaction contemplated by this Agreement based on the fact that a signature was sent by telecopy or electronic mail.

24.     <u>Delivery of Possession</u>.   Possession of the Property shall be delivered to Purchaser on the Closing Date "as is," "where is," and "with all faults" (including being subject to then existing tenancies under the Resident Agreements).

25.     <u>Deposit of Agreement into Escrow</u>.   Notwithstanding anything to the contrary, this Agreement shall not constitute a binding contract between Seller and Purchaser until executed by both of them, and among Seller, Purchaser, and Escrow Agent, until executed by all three of them.

26.     <u>Information Provided by Seller</u>.   Notwithstanding any other provision of this Agreement, but subject to the express representations of Seller hereunder, Seller makes no warranty as to the accuracy or completeness of any information provided by Seller to Purchaser pursuant to this Agreement.

27.     <u>Court Approval</u>.   This Agreement is subject to Court approval and is not enforceable against Sellers until the Court has approved the provisions herein.

*The remainder of this page intentionally left blank*

IN WITNESS WHEREOF, the undersigned Seller and Purchaser have executed this Agreement as of the date first set forth above, intending to be fully bound by its terms and conditions.

**SELLER**

STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company

By: _____
      Clyde Hamstreet
      Chief Restructuring Officer

**PURCHASER**

_____
Bobby Westbrooks

## <u>ACCEPTANCE BY ESCROW AGENT</u>

The undersigned Escrow Agent: (a) accepts the Escrow created by the foregoing Agreement; (b) agrees to act in accordance with the terms thereof; (c) agrees to be the person responsible for closing the transaction within the meaning of Section 6045(e)(2)(A) of the Internal Revenue Code of 1986 (the *"Code"*), and to file all necessary information reports, returns, and statement (collectively, *"Reports"*) regarding the transaction required by the Code, and promptly, upon the filing thereof, transmit copies thereof to Purchaser and Seller; and (d) agrees to indemnify and hold harmless Seller, Purchaser, and their respective attorneys and brokers from and against all claims, costs, liabilities, penalties, or expenses resulting from Escrow Agent's failure to file the Reports and otherwise comply with the terms of this paragraph.

_____

By: _____

Its: _____

Escrow No.: _____

## **EXHIBIT 1**

## **LEGAL DESCRIPTION OF THE LAND**

**EXHIBIT 2**

**BILL OF SALE**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company ("Seller"), and pursuant to the terms of a Purchase and Sale Agreement by and between Bobby Westbrook ("Purchaser"), and Seller, dated as of **[Insert Date]** (the "Agreement"), does hereby sell, transfer and convey to Purchaser, without representation or warranty, all of Seller's right, title and interest, if any, in and to the Personal Property, located within or used in connection with the operation of the Facility except for the Excluded Assets.  All capitalized terms used herein and not otherwise defined shall have the meanings assigned in the Agreement.

To have and to hold the same unto Purchaser, its successors and assigns, forever.

IN WITNESS WHEREOF, the Seller has executed this Bill of Sale as of _____, 2010.

**SELLER**

STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company

By: _____
Name: _____
Title: _____

## EXHIBIT 3

## NON-FOREIGN AFFIDAVIT

## I.R.C. SECTION 1445 CERTIFICATION

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest (the *"Transferee"*) must withhold tax if the transferor is a foreign person. To inform Transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company (*"Transferor"*), the undersigned hereby certifies the following on behalf of Transferor:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Transferor's U.S. tax identification number is 20-2186270; and

3.      Transferor's address is 3723 Fairview Industrial Drive SE, Suite 270, P.O. Box 3006, Salem, Oregon 97302-0006.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by a transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury the undersigned declares that he/she has examined this Certification and to the best of his/her knowledge and belief it is true, correct, and complete, and he/she further declares that he/she has authority to sign this document on behalf of Transferor.

Dated: _____, 2010.

### TRANSFEROR:

STAYTON SW ASSISTED LIVING, L.L.C., an Oregon limited liability company (the Consolidated Sunwest Related Entities), on behalf of Riverdale Senior Living, LLC, an Oregon limited liability company

By: _____
        Clyde Hamstreet
        Chief Restructuring Officer

034618/00002/2280521v1034618/00002/2280521v1

# EXHIBIT C

# Exclusive Sale Listing Agreement

## SUNWEST ASSETS

*Stayton SW Assisted Living, L.L.C., on behalf of Riverdale Senior Living, LLC*

This Exclusive Sales Listing Agreement ("Agreement") is made and entered into as of May 21 2010 by and between _____ ("Owner") and Marcus & Millichap Real Estate Investment Brokerage Company ("Broker"). Owner is the owner of the real property identified above (the "Property"). Owner wishes to sell the Property and to utilize the services of Broker in finding a buyer.

Recitals:

A.    The Parties understand and agree that Jon Harder, a member of the Ownership entity of the Property is in Bankruptcy, In Re Harder Case No. 08-37225-tmb and that the Property is subject to the Order Granting Preliminary Injunction in the matter of Securities and Exchange Comm. v. Sunwest Management, Inc., U.S. District Court Case no. 09-CV-6056-TC, a copy of which has been provided to the Agent or Broker, and pursuant to which a Receiver was appointed to administer properties including the Property and to which the Property is subject.

B.    Seller is managed by a Chief Restructuring Officer, Clyde Hamstreet & Associates, LLC ("CRO") and a Management Committee composed of representatives of investors and creditors of Seller and other Harder entities. Proposed transactions of Seller may be subject to consent of the U.S. Bankruptcy Court for the District of Oregon or the U.S. District Court for the District of Oregon, either of whom may overrule Seller's actions and agreements. While Seller currently has sufficient authorization to enter into this Agreement and sell the Property, Seller does not warrant or represent that subsequent developments in the Bankruptcy Proceeding of Jon Harder or in SEC v. Sunwest Management, Inc. will not affect, alter or extinguish Seller's authority.

Accordingly, the parties agree as follows:

1.    **Exclusive Listing**. Owner hereby grants to Broker the exclusive right to sell the Property, and Broker hereby agrees to use its best efforts to sell the property, on the terms and conditions contained in this Agreement. The property shall be offered for sale at the price set forth in Exhibit A attached hereto.

2.    **Term**. Broker's exclusive right to sell the Property shall commence on the date hereof and shall terminate on October 1, 2010 (the "Term"). At any time, without cause, either Owner or Broker may terminate this Agreement by giving the other party at least fifteen (15) days written notice prior to the effective date of termination specified in such notice. In the event of any such termination, the expiration date of the Term shall automatically be modified to reflect the effective date of termination and neither party shall have any obligation or liability to the other as a result of such termination except for those obligations and liabilities expressly set forth in this Agreement with respect to a sale closing after the Term which qualifies for a commission under Paragraph 3 below.

3.    **Commission**. Broker shall be paid a commission as set forth on Exhibit A. Such commission shall be earned and payable if and only if a sale of the property closes during the Term, or such sale closes within ninety (90) days after the expiration of the Term to a buyer who has submitted a written offer to Broker, which offer has been delivered to Owner during the Term, and on condition that Broker continues to perform services with respect to such buyer as requested by Owner. In the event the sale of the Property fails to close for any reason other than the default of Owner, Broker hall not be entitled to any commission or any portion of any deposit or earnest money deposited in connection with such sale. Broker's commission as set for in Exhibit A shall be the sole compensation paid to Broker. Broker shall not be entitled to reimbursement for any expenses or any other sums Broker incurs related to or involving the performance of the Broker's services.

4.  **Other Brokers**. Broker agrees to promote cooperation with other real estate brokers in furtherance of the sale of the Property and to share the commission payable hereunder in accordance with the schedule set forth in Exhibit A.

5.  **Timing of Payment**. Broker shall be paid the commission only from Owner's gross sales proceeds and only if and when the sale of the Property closes.

6.  **Sale Terms and Document**. All negotiations regarding the price or other terms of sale are subject to Owner's approval; Broker is not authorized to commit Owner to any price or terms. Owner shall prepare a Purchase and Sale Agreement and Escrow Instructions ("Sale Document") to be used in connection with the sale of the Property. Owner may in its own discretion, revise, modify, amend and/or supplement the Sale Document. Owner shall have the sole and exclusive right to approve and execute the Sale Document (on condition that any such change does not affect the commission schedule). In the event of Owner's disapproval of any proposed purchase of the Property, for any reason or for no reason, no commission shall be due or payable hereunder. Broker agrees and acknowledges that is shall not have, and shall not purport or hold itself out to have, the authority to make any representations on behalf of Owner, to negotiate or to execute sales agreements, or to bind Owner as to any matters whatsoever. This Agreement authorizes Broker to solicit offers for the sale, all of which offers are to be submitted to Owner within one (1) business day of receipt thereof by Broker for Owner's consideration, in Owner's sole and absolute discretion.

7.  **Reporting**. Broker shall prepare and submit to Owner (in a form acceptable to Owner) weekly marketing status reports which shall list all prospects contacted and the status of each prospective lease or sale, and Broker shall confer with Owner not less often than once every two (2) weeks to review such sales status and reports. In addition, Broker shall provide Owner with copies of all correspondence and memoranda connected with Broker's leasing and sales marketing activity under this Agreement.

8.  **Personnel Assignment**. It is expressly understood that Mike Pardoll shall be assigned primary responsibility for supervising and conducting the sales and marketing activities for the Property on behalf of Broker. Broker shall use its best efforts to provide Owner with thirty (30) days advance written notice of any change of personnel, and Owner may approve or disapprove any such change. Broker agrees to use employees, agents, and other personnel who are acceptable to Owner. In the event Owner determines in its sole, absolute and arbitrary discretion that such personnel are not diligently pursuing the leasing and sales programs, Broker agrees to make personnel changes within fifteen (15) days from transmittal of written notice by Owner. If Broker and Owner are unable to agree on such personnel changes, then Owner may terminate this Agreement by giving Broker fifteen (15) days written notice. In no event shall Broker or its agents or employees be deemed to be employees of Owner but shall be independent contractors with respect to Owner for the limited purposes of the Agreement.

9.  **Broker's Representation of Himself as Principal.** Broker represents that Broker will not act as a principal in any transaction involving the Property, nor on behalf of any entity in which Broker has a financial or ownership interest, unless the written consent of Owner is first obtained.

10. **Cooperation of Owner.** Owner agrees to cooperate with Broker in effecting a sale of the Property and to immediately refer to Broker all inquiries of any person or entity interested in purchasing the Property.

11. **Advertising.** Broker shall use Broker's best efforts to assure that all advertising and promotional materials comply with all applicable regulations, including without limitation, all fair housing and anti-discrimination regulations. All advertising promotional expenses are to be paid for by Broker unless specifically approved in writing by Owner.

12. **Nondiscrimination.** The parties acknowledge that it is illegal for either of them to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status or physical disability.

13. **Condition of Property.** Broker acknowledges that the Property is being sold by Owner in its "as is" condition without any representations or warranties whatsoever. All prospective purchasers of the Property are to undertake their own investigations to determine the fitness and suitability of the Property.

14. **Entire Agreement.** This Agreement constitutes the entire Agreement of the parties with respect to the sale of the property and may not be amended except by written instrument signed by both parties.

15. **Assignment.** Neither party may assign its rights under this Agreement without the prior written consent of the other and any attempted assignment will be void.

16. **Arbitration.** If a controversy arises with respect to the subject matter of this Representation Agreement or any provision hereof, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

17. **Counterparts.** This agreement may be executed in one or more counterpart6s, each of which shall be deemed original, but all of which together shall constitute one and the same instrument.

18. **Time of Essence.** Time is of the essence in the performance of each an every obligation under this Agreement.

19. **Limit on Authority.** No Commission shall be owed or paid if subsequent developments in the Bankruptcy of Jon Harder or SEC v. Sunwest Management, Inc., require different or additional approvals, of this Agreement or any Purchase and Sale Agreement executed by Seller, prevent sale of the property or require that this Agreement be terminated before the expiration of its Term.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

OWNER:
StantonSW Assisted Living
L.L.C. on behalf of
Riverdale Senior Living, LLC

By: _____
Clyde Hamstreet

Its: _____CRO_____

BROKER:
MARCUS & MILLICHAP REAL ESTATE INVESTMENT
BROKERAGE COMPANY

By: _____

Its: _____SVP_____

Licensee No: ____171286____

By: _____

Its: _____

Licensee No: _____

LENDER

By: _____

Its: _____

## EXHIBIT A – PROPERTIES LISTED WITH COMMISSION

| FACILITY | LOCATION | COMMISSION |
|---|---|---|
| Riverdale Estates | Memphis, TN | The greater of 3% or $50,000 |

AMENDMENT NO. 1 TO EXCLUSIVE SALE LISTING  AGREEMENT DATED May 21, 2010

RECITALs:

A.   The Undersigned (Seller) and Marcus & Millichap Real Estate Investment Brokerage Co. (Broker)
     entered into a Listing Agreement or  Agreement for Representation dated May 21, 2010, in
     which Broker agreed to provide services relating to the sale of real property owned by Seller;
     and

B.   The Parties understand and agree that Jon Harder, a member of the Ownership entity of
     the Property is in Bankruptcy, In Re Harder Case No. 08-36637 and that the Property is
     subject to the Order Granting Preliminary Injunction in the matter of Securities and
     Exchange Comm. v. Sunwest Management, Inc., U.S. District Court Case no. 09-CV-6056-
     TC, a copy of which has been provided to the Broker, and pursuant to which a Receiver
     was appointed to administer properties including the Property and to which the
     Property is subject.

C.   Seller is managed by a Chief Restructuring Officer, Clyde Hamstreet & Associates, LLC
     ("CRO") and a Management Committee composed of representatives of investors and
     creditors of Seller and other Harder entities.  Proposed transactions of Seller may be
     subject to consent of the U.S. Bankruptcy Court for the District of Oregon or the U.S.
     District Court for the District of Oregon, either of whom may overrule Seller's actions
     and agreements.  While Seller currently has sufficient authorization to enter into this
     Agreement and sell the Property, Seller does not warrant or represent that subsequent
     developments in the Bankruptcy Proceeding of Jon Harder or in SEC v. Sunwest
     Management, Inc. will not affect, alter or extinguish Seller's authority.

NOW THEREFORE, the Parties agree to amend the Agreement, as follows:

1.   Seller makes no representations or warranties concerning the condition of the Property which is
     being sold "as is".  Prospective purchasers must undertake their own investigations to
     determine the fitness and suitability of the Property for their purposes.

2.   Notwithstanding any provision in the Agreement apparently to the contrary, Broker shall be paid
     a commission as described in the Agreement if and only if a sale of the Property closes during
     the term of the Agreement, or such sale closes within 90 days after  expiration of the term of
     the Agreement  to a buyer who has submitted a written offer to Agent or Broker and which
     Broker has delivered to Seller within the Term of the Agreement, provided that Broker continues
     to provide services described in the Agreement with respect to the sale, as requested by Owner.

3.   No Commission shall be owed or paid if subsequent developments in the Bankruptcy of
     Jon Harder or SEC v. Sunwest Management, Inc.,   prevent sale of the property or
     require that this Agreement be terminated before the expiration of its Term.

4.  Seller shall have the right, in its, sole and exclusive discretion to approve or disapprove of any offer or any proposed Purchase and Sale Agreement, in whole or in part, for any reason or no reason, in which case no commission will be owed or paid to Broker.

5.  All representations of Seller are made to the best of Seller's actual knowledge.

6.  Except to the extent inconsistent with the provisions and Recitals in this amendment, all provision of the Agreement remain in full force and effect.

*Stayton SW Assisted Living, L.L.C.*
*on Behalf of Riverdale Senior Living, LLC*

SELLER: _____    BROKER: _____

By: _____    By: _____

Its: __CFO__    Its: __SVP__